In the Matter of Kelli SCHMIDT, a
witness before the Special April
1984 Grand Jury, Appellant.

No. 85–1470.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1985.
Decided Oct. 21, 1985.

Cynthia Giacchetti, Patrick A. Tuite, Ltd., Chicago, Ill., for appellant.

Dean J. Polales, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for appellee.

Before ESCHBACH, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Kelli Schmidt, 15, was called by the grand jury as a witness in an investigation that could implicate her mother in a plot to murder her father. Kelli's mother hired a lawyer to represent both of them. The prosecutor moved to disqualify Kelli's lawyer on the ground that anyone representing both Kelli and her mother has a conflict of interest and that Kelli, a minor in her mother's custody, cannot intelligently consent to such a conflict. The district court agreed and disqualified Kelli's lawyer on March 15, 1985. She immediately filed an appeal.

Our jurisdiction depends on the existence of a "final decision." 28 U.S.C. § 1291. When a witness (as opposed to a party) is instructed to produce evidence, a final decision means an order holding the witness in either civil or criminal contempt for failure to testify. *United States v. Ryan*, 402

U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *In re Manner,* 722 F.2d 349 (7th Cir.1983). Kelli has not been held in contempt; she has never appeared before the grand jury; indeed, because of Kelli's appeal, the district court has held in abeyance the prosecutor's motion to compel her to testify. This case is several steps away from a final decision.

Four courts of appeals have held that orders disqualifying counsel for people subpoenaed to appear before grand juries are immediately appealable. See *In re February 1977 Grand Jury,* 562 F.2d 652 (4th Cir.1977); *In re Gopman,* 531 F.2d 262 (5th Cir.1976); *In re April 1975 Grand Jury,* 531 F.2d 600 (D.C.Cir.1976); *In re January 1975 Grand Jury,* 536 F.2d 1009 (3d Cir.1976). All of these cases hold that an order disqualifying counsel is a "collateral order" within the meaning of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We approved these cases in *In re Special February 1977 Grand Jury,* 581 F.2d 1262, 1263 (7th Cir.1978), and extended the collateral order rationale to allow the United States to appeal from an order declining to disqualify counsel for a witness before the grand jury.

In the last two years, however, the Supreme Court has held that the collateral order doctrine does not permit immediate appeal of orders disqualifying counsel in either civil or criminal cases. *Richardson-Merrell, Inc. v. Koller,* — U.S. — 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (civil); *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (criminal). See also *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (no appeal from an order refusing to disqualify counsel in a civil case). In each case the Court held that the order of disqualification was neither independent of the merits nor irremediable on appeal; as a result it was not collateral and hence could not be "final." Unless there is something fundamentally different about orders disqualifying counsel for witnesses before grand juries, they cannot be final either.

■ The positions are essentially the same, however. As the Court explained in *Richardson-Merrell,* if the order of disqualification is erroneous, there are two possibilities: any subsequent adverse judgment may be reversed automatically, or an adverse judgment may be reversed only if the party establishes that the lack of counsel of choice was prejudicial. If reversal is automatic, then the party's interests are fully protected by the eventual appeal. If reversal is not automatic, then the order disqualifying counsel is not "independent" of the merits; it would be necessary to evaluate the merits in order to know whether to reverse. See 105 S.Ct. at 2764–66. Because an order must be *both* independent of the merits and irremediable on appeal (it must be "final," too) in order to be a "collateral order", the litigant disappointed by the order of disqualification always fails to meet one of the tests. See *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982); *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). Things are the same with witnesses before a grand jury. If the witness deprived of counsel of choice is held in contempt, and the disqualification is erroneous, then either reversal is automatic or reversal requires a showing of prejudice. If reversal is automatic, the order of disqualification is remediable on appeal; if reversal depends on a demonstration of prejudice, the order is not independent of the merits.

■ The only differences between civil cases and grand jury matters cut against immediate appeal. *Flanagan* emphasized the interest of speedy disposition of criminal cases, an interest undermined by multiple appeals. Seven months have passed since the district court disqualified Kelli's lawyer. More delay lies ahead in sparring about any substantive objections to her testimony. Delay permits suspects to remain at large, memories to fade, and evidence to disappear. Prosecutions delayed are less likely to succeed; sometimes delay jeopard-

izes the legitimate interests of suspects; for those found guilty, punishment delayed is less of a deterrent. The public interest in prompt resolution of matters pending before a grand jury is more pressing even than that in wrapping up criminal cases. See *United States v. Calandra,* 414 U.S. 338, 349–52, 94 S.Ct. 613, 620–22, 38 L.Ed.2d 561 (1974); *DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). The grand jury is an investigatory body. Until it completes its job, the criminal process cannot begin. Yet there will be more witnesses before the grand jury than there are defendants, and delay in securing the evidence of any one of these witnesses may defer the conclusion of the investigation. The more witnesses there are, the more cautious courts must be about permitting delay that may cascade when combined with the other delays inevitable in the process.

Many of the witnesses before the grand jury may be allied with the putative defendants and therefore have an interest in delay. Multiple appeals by multiple witnesses multiply delay. The rule that the witness must stand in contempt to obtain appellate review puts some interest on the other side of the balance. It "ensures that people raise only those claims that are sufficiently serious that they are willing to make a sacrifice to obtain appellate review. Self-interest cuts down dramatically on the number of appeals taken to obtain delay." *In re Klein,* 776 F.2d 628, 631 (7th Cir.1985). The rule requiring a citation for contempt also consolidates all claims for resolution at once. Kelli Schmidt asserts lack of jurisdiction and parent-child privilege (on which see *United States v. Davies,* 768 F.2d 893, 896–900 (7th Cir.1985)). She also maintains that the subpoena is an abuse of process and would subject her to self-incrimination. The course of questioning may give rise to new claims or obviate the existing ones. An appeal from an adjudication in contempt permits the court to

dispose of all claims at once and to disregard those that do not affect the outcome.

■ Although we conclude that the interest in prompt disposition of all claims in a single appeal is greater in a grand jury case than in *Flanagan,* the witness's interest in retaining counsel of choice is less urgent. The disqualification of a defendant's counsel implicates rights under the sixth amendment. But a witness before a grand jury has no right under the sixth amendment because he is not an "accused." *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *In re Klein, supra,* slip op. 9. The witness's right is akin to that of parties in civil cases—a right under the due process clause to be free of unjustified interference by the government in a private arrangement between client and lawyer. The right is qualified in grand jury proceedings; although a lawyer may represent a party or witness in court in civil cases, no lawyer accompanies the witness into a grand jury room. So although the need for dispatch is greater here than in *Flanagan,* the interests of the witness are weaker than those of a criminal defendant.

■ At oral argument the (disqualified) counsel for Kelli Schmidt maintained that it did not make any difference whether a citation for contempt is essential to our jurisdiction. If it is, she asserted, Kelli will refuse to engage a new lawyer or to appear, leading to a citation for contempt; if we affirm that decision, she then will present other objections to the subpoena. That way, counsel asserted, there will be multiple appeals and extended delay no matter what we hold. Counsel misunderstands the function of a motion to compel a witness's testimony or to hold a witness in contempt for failure to testify. Such a motion requires the witness to present all available defenses. Any defense omitted is lost forever. See *United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983).

■ If this requires Kelli to retain new counsel while protesting the removal of her

old one, that is an ordinary incident of the lack of an immediate appeal. District judges sometimes err; some errors are beyond effective appellate correction; but the possibility of error and the harm the error causes do not themselves allow appeal, because appellate jurisdiction depends on the *finality* of a decision, not the likelihood of error. See *Richardson-Merrell, supra,* 105 S.Ct. at 2764. But Kelli's retention of new counsel may not lead to baleful effects. New counsel may reassess the strength of Kelli's defenses to the subpoena or suggest to Kelli that her interests lie in cooperating with the grand jury. The dismissal of this appeal may promote prompt resolution of the dispute without injury to anyone.

One last matter. Although our decision obviously stands in some tension with *In re Special February 1977 Grand Jury,* we do not overrule that case. It held that the government may take an immediate appeal from the denial of a motion to disqualify a witness's counsel. The denial of such a motion could not be raised in any fashion on appeal from a citation for contempt. *Flanagan* (104 S.Ct. at 1052) and *Firestone* (449 U.S. at 372 n. 8, 101 S.Ct. at 672 n. 8) reserved the question whether the prosecutor may appeal from the denial of a motion to disqualify in a criminal case. We do not disturb our holding in *Special February 1977 Grand Jury* that he may. Whether the holding can coexist with the rationale of *Flanagan, Richardson-Merrell,* and *Firestone* is a question for another day.

The appeal is dismissed for want of jurisdiction.