**LAW OFFICES OF SEYMOUR M. CHASE, P.C., Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

No. 87–1054.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 4, 1988.

Decided March 25, 1988.

As Amended March 25, 1988.

Gene A. Bechtel, with whom Seymour M. Chase, Washington, D.C., was on the brief, for petitioner.

David Silberman, Counsel, F.C.C., Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Robert B. Nicholson, Marion Jetton, and Robert J. Wiggers, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents.

Catherine G. O'Sullivan, Atty., Dept. of Justice, Washington, D.C., also entered an appearance, for respondents.

Before WALD, RUTH BADER GINSBURG, and WILLIAMS, Circuit Judges.

Opinion filed by Circuit Judge RUTH BADER GINSBURG.

Opinion concurring in the judgment filed by Circuit Judge WILLIAMS.

Dissenting opinion filed by Circuit Judge WALD.

PER CURIAM:

This petition seeks judicial review of an order of the Federal Communications Com-

mission disqualifying petitioner, an attorney, from continuing to serve as counsel in an ongoing agency proceeding.

Circuit Judge RUTH BADER GINSBURG and Circuit Judge WILLIAMS, each writing separately, join in a judgment dismissing the petition.

Chief Judge WALD dissents from the panel's judgment.

RUTH BADER GINSBURG, Circuit Judge:

■ The law offices of Seymour M. Chase petition for review of an order of the Federal Communications Commission (FCC or Commission) disqualifying Chase from appearing as counsel for one of the applicants in a comparative broadcast licensing proceeding. *See In re Owens*, 104 F.C.C.2d 848 (Rev.Bd.1986), *reprinted in* Joint Appendix (J.A.) at 2, *review denied*, 2 F.C. C. Rcd 38 (1987) (Commission Order), *reprinted in* J.A. at 1. I conclude that an order disqualifying an attorney from appearing as counsel in an FCC proceeding is currently unreviewable in court when the petition for the judicial review is filed by the attorney rather than his client. This conclusion, I believe, is impelled by the reasoning underlying the Supreme Court's decision in *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). I therefore vote to dismiss the petition without reaching the merits of Chase's challenge to the Commission order.

## I.

In April 1985, Liberty Broadcasting Corporation (Liberty) represented by Chase, a member of the District of Columbia bar, filed an application with the FCC for a new television station in Bakersfield, California. One of the competing applicants in the ensuing comparative broadcast licensing proceeding for the Bakersfield station was Harold L. Mullican. In October 1985, an application filed by Chase on behalf of an individual client for a new television station in Newton, New Jersey was amended to name Newton Television, Inc. (NTI) as the corporate applicant for the Newton station. The amendment, filed by Chase in his capacity as NTI's corporate counsel, indicated that Dr. Samuel Walters was an 18.67% nonvoting stockholder of NTI. On November 21, 1985, Chase, as counsel to Liberty, learned that Mr. Mullican had amended his application in the Bakersfield proceeding to specify a limited partnership, Mullican, Limited Partnership (Mullican), listing Walters as its 70% limited partner. As of the end of November 1985, then, Chase found himself involved in two application proceedings before the FCC—in the Newton proceeding he represented a corporation in which Walters was a shareholder, in the Bakersfield proceeding he opposed a limited partnership in which Walters was a partner.

On May 10, 1986, nearly six months after he became aware of the state of affairs with respect to Walters, Chase, acting on behalf of Liberty, sought to depose Walters in the Bakersfield proceeding. At the beginning of the deposition session, Chase indicated that he represented NTI in the Newton proceeding. Mullican's counsel objected to Chase deposing Walters and Walters refused to testify. On May 12, Chase terminated his representation of NTI but did not withdraw from representing Liberty in the Bakersfield proceeding. On May 14, Mullican filed a motion to disqualify Chase as Liberty's counsel contending that "Chase's simultaneous representation of Liberty and NTI unavoidably involves the firm in representing differing and discordant interests." *Motion to Disqualify Counsel to Liberty Broadcasting* at ¶ 13, *reprinted in* J.A. at 32.

Upon hearing argument of Mullican's motion on May 19, the presiding Administrative Law Judge (ALJ) immediately made an oral ruling; he granted the motion and disqualified Chase. On May 22, pursuant to 47 C.F.R. § 1.301(a)(5) (1985), the ALJ issued an order postponing the Bakersfield

proceeding until September 16, 1986;[1] the following day a memorandum opinion was released explaining the ALJ's disqualification order. The ALJ determined that a conflict of interests existed because Chase could have used confidential information concerning Walters obtained in the course of Chase's representation of NTI in the Newton proceeding to cross-examine Walters in the Bakersfield proceeding; such use, the ALJ maintained, could unfairly harm Mullican in relation to Chase's representation of Liberty.

Liberty appealed the order disqualifying Chase to the Review Board which affirmed the ALJ's ruling. *In re Owens*, 104 F.C.C. 2d 848 (Rev.Bd.1986), *reprinted in* J.A. at 2. On August 27, 1986 Chase (not Liberty) filed an application for Commission review of the Board's decision.[2] During the pendency of Chase's application to the Commission, Liberty, having secured other counsel, entered into a settlement agreement with the other applicants in the Bakersfield proceeding. The agreement was released on October 10, 1986. On December 23, 1986, the Commission denied Chase's application for review; the order to that effect was released on January 8, 1987. *In re Owens*, 2 F.C.C.Rcd 38 (1987). Chase promptly sought this court's review of the Commission's disqualification order.

At oral argument the panel stated its concern about the reviewability of Chase's petition and instructed the parties to submit supplemental briefs responding to the question:

Is the disqualification ruling addressed in the petition a judicially reviewable order under 28 U.S.C. § 2342 and 47 U.S.C. § 402(a)? *See Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424 [105 S.Ct. 2757, 86 L.Ed.2d 340] (1985).

Instruction of January 4, 1988. In their respective briefs, both Chase and the FCC maintain that the disqualification order is judicially reviewable under the cited legislative prescriptions. Mindful of the close consideration that should attend a disposition opposed by both sides to an appeal, I reluctantly conclude that the FCC order disqualifying Chase, under current Supreme Court instruction, is not subject to judicial review in the posture in which the ruling appears before us.

## II.

Our authority to review FCC orders is predicated upon 28 U.S.C. § 2342(1) (1982) and 47 U.S.C. § 402 (1982).[3] These statutory provisions empower courts of appeals to review final orders of the FCC. *See, e.g., Illinois Citizens Comm. for Broadcasting v. FCC*, 515 F.2d 397, 402

1. 47 C.F.R. 1.301(a)(5) (1986), under the heading "Appeal from presiding officer's interlocutory ruling," provides:

A ruling removing counsel from the hearing is appealable as a matter of right, by counsel on his own behalf or by his client. (In the event of such ruling, the presiding officer will adjourn the hearing for such period as is reasonably necessary for the client to secure new counsel and for counsel to familiarize himself with the case).

2. 47 C.F.R. § 1.301(a)(5) (1986) *gives both client and counsel a right of appeal from a presiding officer's ruling removing counsel from a proceeding. See supra* note 1.

3. 28 U.S.C. § 2342 (1982) provides, in relevant part:

The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—
(1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47....

47 U.S.C. § 402(a) (1982) provides:

Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28.

The specific rights of appeal set out in 47 U.S.C. § 402(b) (1982) are inapplicable to Chase's petition.

In addition to these final order provisions specifically addressing judicial review of FCC orders, section 10(c) of the Administrative Procedure Act (APA) includes a general final judgment rule for agencies:

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

5 U.S.C. § 704 (1982).

(D.C.Cir.1975); *Bethesda–Chevy Chase Broadcasters, Inc. v. FCC*, 385 F.2d 967, 968 (D.C.Cir.1967). An order disqualifying an attorney from serving as counsel in a pending trial court proceeding is, when issued, an interlocutory order. *See Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 430, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985) ("An order disqualifying counsel in a civil case is not a final judgment on the merits of the litigation."). The same characterization generally attends an order disqualifying an attorney from serving as counsel in a pending administrative proceeding. *See, e.g.*, 16 C.F.R. § 3.23 (1987) (appeal to Federal Trade Commission from an ALJ's suspension of "an attorney from participation in a particular proceeding" is an "interlocutory appeal"); 17 C.F.R. § 10.101 (1987) (appeal to Securities Exchange Commission from an ALJ's suspension of "an attorney from participation in a particular proceeding" is an "interlocutory appeal"); 17 C.F.R. § 10.109 (1987) (same); 17 C.F.R. § 12.309 (1987) (same); 47 C.F.R. § 1.301 (1986) (FCC "ruling removing counsel" from a hearing is an "interlocutory ruling"). *See also Community Broadcasting of Boston, Inc. v. FCC*, 546 F.2d 1022 (D.C.Cir.1976) (characterizing, by analogy to district court orders, agency denial of motion to disqualify as interlocutory and not immediately appealable).

Both the FCC and Chase, however, rely on 47 C.F.R. § 1.301(a)(5) (1986), which affords "counsel on his own behalf" a right of appeal from a presiding officer's disqualification order. Disposition by the Review Board and the Commission of such a disqualification order, both parties maintain, converts the original interlocutory ruling into a final order of the Commission; the order thus finalized, the parties assert, is reviewable by this court under 28 U.S.C. §§ 2342(1), 2344 (1982) even though the petitioner is counsel proceeding solely for himself on a grievance independent of his

client's claim or defense in the proceeding in which the disqualification order was entered. As the FCC puts it, "[w]hen the attorney personally invokes [47 C.F.R. § 1.301(a)(5) ], the agency has effectively allowed the attorney to become a party to a disqualification proceeding with a life of its own.... The question thus becomes whether Chase is a 'party aggrieved' by a 'final order' of the Commission within the meaning of [28 U.S.C. §§ 2342(1), 2344 (1982) ]." [4] FCC Supplemental Brief at 6–7. The Commission answers that question in the affirmative, although acknowledging that its counsel "have not discovered a case with analogous facts." *Id.* at 7. Nor has the dissent uncovered any such case.

■ I reject the parties' argument for this reason: we have no discretion to allow an agency, simply and solely by crafting internal rules, to "grant[ ]" or "create[ ] a cause of action," *see* Dissent at 522, 526, and thereby enlarge the appellate authority of our court. Leaving aside the FCC's internal rule dispensation, the Supreme Court has instructed us that an attorney situated as Chase is may not obtain court of appeals review of an order disqualifying him from participating in a hearing.

In *Richardson–Merrell*, 472 U.S. at 426, 105 S.Ct. at 2759, the Supreme Court held that "orders disqualifying counsel in a civil case are not collateral orders subject to immediate appeal." Most significantly for the case at hand, the Court stated that this holding effectively denies a judicial review remedy to "an attorney whose reputation has been egregiously injured by the trial court's disqualification decision," *id.* at 435, 105 S.Ct. at 2763, "when the client is satisfied with the judgment obtained by substitute counsel." *Id. See also id.* at 435 n. 2, 105 S.Ct. at 2763 n. 2 (observing that misconduct of a judge "for which no judicial remedy is available" may be made the subject of a plea for an administrative remedy from the Circuit Judicial Council).[5] Nota-

---

**4.** 28 U.S.C. § 2344 (1982) provides, in relevant part:

Any party aggrieved by the final order [of the agency] may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies.

**5.** Prompted by the Supreme Court's statement in *Richardson–Merrell* that

[e]ven when the client is satisfied with the judgment obtained by substitute counsel, an attorney whose reputation has been egregiously injured by the trial court's disqualification

bly, this court in *Koller v. Richardson–Merrell, Inc.,* 737 F.2d 1038 (D.C.Cir.1984), *rev'd,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed. 2d 340 (1985), while making the decision ultimately reversed by the Supreme Court that a disqualification order in a civil case is subject to immediate (interlocutory) appeal, apparently shared the High Court's view that an attorney has no *independent right* to appeal a disqualification order at any stage of the proceeding: "In the event that plaintiffs were satisfied with the final verdict obtained by substitute counsel, the disqualified attorneys could be left with no means whatsoever of vindicating their own important interests on appeal from a final judgment." *Id.* at 1053.

Neither the Supreme Court nor this court elaborated on the conclusion each recited in dictum that no judicial remedy is available to a disqualified attorney independent of the remedies available to his client. *See also Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020, 1027 (5th Cir. Unit B June 1981) (asserting, without accompanying explanation, that there is

no independent judicial remedy for the disqualified attorney). The passages from *Richardson–Merrell* just quoted, however, reveal that both courts envisaged the very question presented to us: whether a disqualified attorney can independently seek judicial review of his disqualification *after* a final disposition of the episode-in-controversy satisfactory to his ex-client. Both the Supreme Court and this court indicated that the question of the appealability of the disqualification order by the attorney himself does not turn on the timing of the appeal. No judicial remedy is available on the solo plea of the disqualified attorney, *Richardson–Merrell* counsels, whether the attorney seeks immediate (interlocutory) appeal or awaits the conclusion, by final judgment, of the underlying proceeding from which the attorney was disqualified.[6]

Were agency regulations governing appeals of rulings *within* the agency permitted to determine the scope of review or the qualification of parties to seek review before the federal courts,[7] this anomalous

decision might be able to obtain relief from the Circuit Judicial Council pursuant to 28 U.S.C. § 332(d)(1)[,] 472 U.S. at 435, 105 S.Ct. at 2763, I note the Review Board's suggestion that the matter in question be examined by the Committee on Professional Responsibility of the Federal Communications Bar Association. *See* In re Owens, 104 F.C.C.2d 848, 858 n. 7 (Rev.Bd.1986). I further note the possibility of enlisting the aid of the D.C. Bar's Legal Ethics Committee. Attorneys confronting significant questions of professional responsibility may seek an advisory opinion from that Committee; Chase might have sought such an opinion when he became aware, in November 1985, of the potential conflict in his representation of Liberty and NTI, and indeed he might do so even now. *See* D.C. Bar Legal Ethics Comm. R. C–1, C–2. Moreover, it might be in order for an agency such as the FCC, which itself possesses no particular expertise on matters of an attorney's professional responsibility, to address recurring questions to the Committee outside the confines of a specific case, *see* D.C. Bar Legal Ethics Comm. R.F; D.C. Bar Legal Ethics Comm. Op. No. 92 (request of D.C.Corp.Counsel), or perhaps even at the time the issue arises during a proceeding. *See* D.C. Bar Legal Ethics Comm. R. C–4 (limiting but not eliminating the possibility of rendering opinions on specific issues involved in pending litigation). This latter course could be analogized to our practice of certifying to state tribunals dispositive questions of local law when no current precedent indi-

cates the answer. *See, e.g., Penn Mut. Life Ins. Co. v. Abramson,* 837 F.2d 484, 485 (D.C.Cir. 1987) (certification of novel question of D.C. law to D.C. Court of Appeals pursuant to D.C. Code Ann. § 11–723 (Supp.1987)).

6. Despite the obvious reputational and possible financial interests at stake for a disqualified attorney, *see Meese v. Keene,* —— U.S. ——, 107 S.Ct. 1862, 1867, 95 L.Ed.2d 415 (1987) (adverse impact on professional reputation constitutes "distinct and palpable" injury), the unarticulated intuition behind the courts' dicta in *Richardson–Merrell* may be that the right to appear before a tribunal vests in the client not in the attorney. While the right to be represented by counsel of one's choice is an aspect of the general right, this subsidiary right also vests in the choosing client and not the chosen counsel. Thus, one might reason that only the client should be allowed to initiate a plea for a judicial remedy for the loss of his chosen counsel.

7. By its citation to *United States v. Erika, Inc.,* 456 U.S. 201, 207 n. 7, 102 S.Ct. 1650, 1653 n. 7, 72 L.Ed.2d 12 (1982), the dissent reveals its pervasive error: the dissent constantly equates, blends or confuses an appeal right *within an agency* with a right to seek judicial review. An agency surely may "grant" or "create" the former right. *See* Dissent at 522, 526. The dissent strides into uncharted territory, however, in suggesting that the agency may also open (or shut) the court's door at its will.

situation would arise: attorneys disqualified in district court proceedings would have no recourse to a judicial remedy while attorneys disqualified in administrative proceedings before agencies such as the FCC that afford counsel an independent right of administrative review would have a judicial remedy. In view of the constant and closer supervisory authority federal courts of appeals exercise over district courts within the circuit, such a dichotomy would be all the more incongruous.

In sum, we are currently counseled by *Richarson–Merrell* that an attorney cannot independently pursue an appeal from a disqualification order made by a district court.[8] We have no more warrant to accord such a right to an attorney held disqualified by an agency's order. Nor can we cede to each particular administrative agency the decision whether an attorney disqualified by that agency will have access to judicial review. The FCC surely can confer an independent right of administrative appeal upon an attorney in Chase's situation. But the Commission cannot

thereby confer upon the attorney a right "on his own behalf" to judicial review.

### CONCLUSION

For the reasons stated, I vote to dismiss Chase's petition as unreviewable and I intimate no view on the merits of the Commission's disqualification order.[9]

WILLIAMS, Circuit Judge, concurring:

I concur in the prevailing disposition because I believe that the petitioner—a lawyer whom the Federal Communications Commission disqualified from representation of a party in a single pending matter—lacks standing to pursue his claim in the courts.

I agree with Judge Ginsburg that *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), clearly reflects the Supreme Court's judgment that the interests of counsel are entitled to little or no weight in the litigative process. Where the client's interests are

---

8. Unlike the case of a federal question raised by a state court litigant who does not meet Article III limitations on access to federal court, *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 2971, 86 L.Ed.2d 628 (1985) ("Standing to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court."); *Doremus v. Board of Education*, 342 U.S. 429, 434, 72 S.Ct. 394, 397, 96 L.Ed. 475 (1952) (Article III limits on federal jurisdiction apply to appeals from state courts), I see no constitutional impediment to the recognition of a right on the part of counsel independently to appeal a disqualification order. *Cf. Lipscomb v. Wise*, 643 F.2d 319, 320 (5th Cir. Unit A Apr. 1981) (lawyers' claims to fees are "cognizable under Article III because they have 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues'"), quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

I note, furthermore, that the centrality of the interest of the parties to a legal proceeding does not imply that no other interests in such a proceeding merit discrete recognition for purposes of appeal. For example, recalcitrant witnesses cited for civil contempt pursuant to 28 U.S.C. § 1826 (1982) have an independent right of appeal. Thus, I believe that the federal courts, in accord with the FCC, could recognize the interests—both reputational and financial—

of disqualified attorneys as independently appeal-worthy. But *Richardson–Merrell* is our current guide, and it points us away from such recognition.

9. Under *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950), we routinely vacate first instance dispositions when appellate review "was prevented through happenstance." Although the *Munsingwear* doctrine extends to administrative orders, *Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961), that doctrine does not permit us to vacate the Commission's order in this case.

The Chase disqualification order would have been reviewable in court in the context of a petition by Chase's client, Liberty, seeking review of an adverse FCC decision in the licensing proceeding. Liberty's decision to settle, however, was a decision to "decline[ ] to pursue its appeal." *See Karcher v. May*, —— U.S. ——, 108 S.Ct. 388, 395, 98 L.Ed.2d 327 (1987) (refusing to apply *Munsingwear*). The application of *Munsingwear* requires that, but for an intervening happenstance, such as the settlement in this case, the issue on appeal would have been reviewable if presented by the very party appealing. But I am compelled to conclude, confronted with *Richardson–Merrell*, that no petition *filed by Chase* contesting the disqualification order on his own behalf (and not on behalf of Liberty) would have been reviewable.

still at risk, the case says, a decision to appeal on grounds of wrongful disqualification "should turn *entirely* on the client's interest." 472 U.S. at 435, 105 S.Ct. at 2763 (emphasis added). The present context is different, however, in several ways. Settlement of the underlying dispute has removed any chance that counsel's self-protective efforts might jeopardize the client. The settlement also disposes of *Richardson–Merrell*'s finality concerns—that interim appellate review would interrupt an ongoing proceeding or bring about piecemeal litigation. But the modest weight that *Richarson–Merrell* assigns to counsel's interests at least cautions against appellate courts lightly taking on the task of correcting (or editing) procedural decisions made by an agency along the way.

Standing is the normal rubric under which courts assess the character and weight of a claimant's interest, to see whether it is entitled to a judicial hearing. As counsel's reputational interest surely satisfies the constitutional minimum, the inquiry turns to prudential standing and (initially) a determination whether "the interest sought to be protected by the complainant is arguably within the zone of interests to be *protected* or *regulated* by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970) (emphasis added); *see also Clarke v. Securities Industry Association*, 479 U.S. 388, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). No one suggests that Congress sought to "protect" communications lawyers through enactment of the Federal Communications Act, 47 U.S.C. § 151 *et seq.* (1982). Its provision of employment for hundreds or thousands of lawyers was surely an unintended by-product.

Nor can Congress be said to have intended to "regulate" the conduct of communications lawyers. We must distinguish between those interests that Congress sought to regulate and those that it may have expected the agency to affect in the course of the regulatory process. *See Tax Analysts & Advocates v. Blumenthal*, 566 F.2d 130, 144–45 (D.C.Cir.1977) (drawing a sharp distinction between "zone of interests" and zone of "impact" or "consequence"); *Haitian Refugee Center v. Gracey*, 809 F.2d 794, 814 (D.C.Cir.1987) (in explicating *Tax Analysts*, court notes that mere congressional recognition that a statute may have an effect on attorneys does not bring them within the statute's zone of interests). It is hard to see how counsel's interests rise above the latter category.

That Congress gave the Commission broad discretion to "conduct its proceedings," 47 U.S.C. § 154(j), hardly brings attorneys within the scope of regulated interests in the usual sense of the term. As we observed in *Haitian Refugee Center v. Gracey*, "While [8 U.S.C. § 1362 (1982)] creates a right of representation for aliens to be represented in exclusion or deportation proceedings, it seems impossible that the interest of the HRC in being the representative is also within the zone of interests." 809 F.2d at 815. Witnesses may similarly be the object of orders issued by the Commission in the conduct of its proceedings; in the absence of some impact on their common law, statutory or constitutional rights, I would not suppose them able to ask the courts to review statements made by the Commission, even if quite pejorative.

Nor does the Commission's provision of an internal right of review seem to me to change the picture. Agency appellate review gives disqualified counsel the benefit of a second opinion and the Commission a chance to develop consistent standards. Both are fine things, but neither helps bring counsel's interests within the zone intended by Congress. While *United States v. Erika, Inc.*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), observed in dictum that the Secretary's regulations made clear that a statutory right of non-judicial review extended beyond the literal language of the statute, *id.* at 207 n. 7, 102 S.Ct. at 1653 n. 7, it did not discuss standing or suggest that agency regulations could widen the congressionally determined zone of interests.

A Commission order *generally* disqualifying an attorney from practice (temporarily or permanently) would pose a completely different issue. Such an order would directly prevent those regulated by the Commission, or intended by Congress to benefit from its regulation, from securing representation by the counsel of their choice. Standing for an attorney seeking review of such an order would thus advance their interests, and the attorney could well be seen as acting as a "private Attorney General." *See Associated Industries of New York State, Inc. v. Ickes,* 134 F.2d 694, 704 (2d Cir.), *vacated as moot,* 320 U.S. 707, 64 S.Ct. 74, 88 L.Ed. 414 (1943); *cf. FCC v. Sanders Bros. Radio Station,* 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940). But it is hard to see how the core interest holders could have such a derivative interest in the state of the FCC record in its one-time disqualification of Chase.

We have in some cases granted "third party" standing to suppliers of regulated parties where the challenged decision would curtail (or extinguish) their market opportunities. *See National Cottonseed Products Ass'n v. Brock,* 825 F.2d 482 (D.C.Cir.1987); *FAIC Securities, Ins. v. United States,* 768 F.2d 352 (D.C.Cir.1985). Writing for the court in *FAIC,* then-Judge Scalia appeared to endorse the explanation of Professor Monaghan, *Third Party Standing,* 84 Colum.L.Rev. 277 (1984), that when *either* party to a class of transactions objects to a restriction, it is effectively claiming that "the state has advanced no sufficient interest to justify prohibiting the interaction." *Id.* at 303, quoted in *FAIC,* 768 F.2d at 360 n. 5. But the only transaction the FCC has prohibited—Chase's representation of a client in one now-settled dispute—is plainly moot.

Professor Monaghan's analysis of course fits neatly with those cases for which the zone-of-interests test is inapposite because the challenger contends (in effect) that *ultra vires* acts of the agency have interfered with some common law or possibly constitutional interest. *Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 422–23, 62 S.Ct. 1194, 1202–03, 86 L.Ed. 1563 (1942) (broadcasters had standing to challenge regulations purporting "to operate to alter and affect adversely appellant's contractual rights and business relations with station owners" whose licenses would be jeopardized by continuing relations with the broadcasters); *see also United States v. Storer Broadcasting Co.,* 351 U.S. 192, 199–200, 76 S.Ct. 763, 768–69, 100 L.Ed. 1081 (1956) (similar); *Haitian Refugee Center v. Gracey,* 809 F.2d at 811 n. 13. In the most relevant of these cases, *Joint Anti–Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951), a variety of organizations complained that they had been erroneously stigmatized as Communist by the Attorney General acting beyond the scope of his authority and that the stigma had drawn on them an array of adverse private and governmental actions. The Court found injury to a "legally protected right," namely that of "a bona fide charitable organization to carry on its work, free from defamatory statements of the kind discussed." *Id.* at 140–41, 71 S.Ct. at 632–33. Even if *Joint Anti–Fascist* sustains standing when the agency's decision is attacked (as it is here) merely for being an erroneous exercise of conceded authority, it surely cannot encompass the interest of every person of whom an agency speaks critically in the course of an official opinion. *Cf. Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

\*     \*     \*     \*     \*     \*

Because I do not believe that Congress intended the Commission to regulate the conduct of the communications bar other than incidentally to its conduct of proceedings, or that the Commission has materially invaded any common law or constitutional right of Chase's, I believe that the petitioner's claim fails for want of prudential standing. I therefore concur in dismissal of the action.

WALD, Chief Judge, dissenting:

The novel issue in this case is whether the Federal Communications Commission's (FCC or Commission) order disqualifying attorney Chase is a reviewable action. Because along with both parties to the case,

Chase and the FCC, I conclude that the Supreme Court's rationale in *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), does not apply to deny judicial review of a disqualification order under an agency regulation that grants a cause of action to attorneys in their own right to challenge such disqualifications, I would hold that review is proper under 47 U.S.C. § 402(a) and 28 U.S.C. § 2342.

Section 2342 of 28 U.S.C. vests this court with jurisdiction over "all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." In turn, § 402(a) of the Communications Act of 1934, as amended, reads: "Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter ... shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28." 47 U.S.C. § 402(a).[1] There can be no question that the FCC's disqualification order involved in this case is a final order under Administrative Procedure Act standards.

As Judge Ginsburg's opinion notes, attorney Chase adhered to clear FCC procedure[2] and exhausted every channel of internal agency appeal of his disqualification order. The chronology of Chase's internal FCC appeals is brief. On May 19, 1986, the presiding Administrative Law Judge (ALJ) disqualified him for the alleged representation of two opposing interests in the Bak-ersfield licensing proceeding. Chase's client Liberty appealed the disqualification to the Review Board, which affirmed the ALJ order. *In re Owens*, 104 F.C.C.2d 848 (Rev.Bd.1986), *reprinted in* Joint Appendix (J.A.) at 2.[3] Then, on August 27, 1986, Chase invoked his Rule 1.301(a)(5) right, *supra*, to appeal the removal order. Meanwhile, Liberty retained other counsel, and its dispute—proceeding independently from Chase's disqualification case—was settled by agreement on October 10, 1986. The full Commission did not deny Chase's disqualification appeal until January, 1987. *In re Owens*, 2 F.C.C.Rcd 38 (1987). Chase filed the present appeal against the Commission action as a final order reviewable under 47 U.S.C. § 402(a).

Any suggestion that the Commission's January, 1987 ruling denying Chase's challenge to his disqualification is not "final agency action" is difficult to fathom. Not only had Chase exhausted every stage of agency appeal, but, decisive for an APA "finality" inquiry, the Commission's pronouncement conclusively fixed a legal status on Chase. The Commission made its final determination that Chase had been properly disqualified. Precisely such a fixing of a legal relationship is all that is necessary to demonstrate the finality of an agency order for APA purposes. *Reuters Ltd. v. FCC*, 781 F.2d 946, 947 n. 1 (D.C. Cir.1986); *Natural Resources Defense Council, Inc. v. Nuclear Regulatory Commission*, 680 F.2d 810 (D.C.Cir.1982).[4]

1. The corresponding provision in the Administrative Procedure Act (APA or "the Act"), which establishes a presumption of reviewability of agency actions, authorizes review of "final agency action" for which there is no other adequate remedy in a court, 5 U.S.C. § 704, and where the party petitioning for review is "adversely affected or aggrieved by [the] agency action within the meaning of the relevant statute." *Id.* § 702. I agree with both the FCC and petitioner Chase that these two provisions, which embody the doctrines of finality and standing, have been fulfilled in this case.

2. Rule 1.301(a), section 5, reads:
   A ruling removing counsel from the hearing is appealable as a matter of right, *by counsel on his own behalf* or by his client.
   47 C.F.R. § 1.301(a)(5) (1986) (emphasis added).

3. An agency's characterization of action as interim is not decisive; courts have authority to consider what is in form an interlocutory administrative order but is in substance a final determination of a person's rights. *See, e.g., Carter/Mondale Presidential Committee, Inc. v. Federal Election Commission*, 711 F.2d 279, 288 n. 17 (D.C.Cir.1983) (quoting *Fidelity Television, Inc. v. FCC*, 502 F.2d 443, 448 (D.C.Cir.1974) (per curiam) ("principle of finality in administrative law is not ... governed by the administrative agency's characterization of its action, but rather by a realistic assessment of the nature and effect of the order")).

4. The two cases cited in Judge Ginsburg's opinion for the requirement of finality, *Illinois Citizens Comm. for Broadcasting v. FCC*, 515 F.2d 397, 402 (D.C.Cir.1975), and *Bethesda–Chevy Chase Broadcasters, Inc. v. FCC*, 385 F.2d 967, 968 (D.C.Cir.1967), dealt respectively with a speaker's unofficial remarks (not agency action at all) and an agency request that a party amend

These relevant facts distinguish our case from *Richardson–Merrell.*[5] The Supreme Court's avowed purpose in *Richardson–Merrell* was to arrest further erosion of the final judgment rule through over-extension of the "collateral order" exception. 472 U.S. at 440, 105 S.Ct. at 2766. The Court found that granting immediate review of an interlocutory appeal from a disqualification order rendered by the district court in a civil case would not only promote "piecemeal" litigation, but also elevate attorneys' desires for vindication above their clients' interests in proceeding to final judgments in their main cases. *Id.* at 434–35, 105 S.Ct. at 2763. Both concerns vanish, however, when an agency regulation provides for a separate cause of action between the disqualified attorney and the agency—a cause of action independent of an underlying dispute that may be settled prior to final decision on the attorney's petition. *Cf. In re Schmidt,* 775 F.2d 822, 823 (7th Cir.1985) (order that is *"both* independent of the merits and irremediable on appeal" would be immediately appealable under *Richardson–Merrell* ). In *Richardson–Merrell,* the Court viewed the only "case or controversy" as that between the main parties to the civil case; the attorney was in effect treated as an agent or extension of the client. In this case, however, the FCC has created a cause of action against the agency for attorneys who are disqualified in proceedings before the FCC. A subsequent appeal to the courts clearly involves a genuine justiciable controversy between the attorney and the agency.

Chase's aggrievement by a *final* FCC order adjudicating his separate complaint against the agency thus places him outside the contours of *Richardson–Merrell.*[6] It

does not end the reviewability inquiry, however. Judicial determination may be foreclosed where "statutes preclude judicial review...." 5 U.S.C. § 701(a)(1). If the withholding of judicial review is not express, however, there must be clear and convincing evidence of Congress' intent to deny judicial review. *See* H.R.Rep. No. 1980, 79th Cong., 2d Sess. 41 (1946) ("To preclude judicial review under this bill [APA] a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withold it. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review."); *see also Morris v. Gressette,* 432 U.S. 491, 501, 97 S.Ct. 2411, 2418, 53 L.Ed. 2d 506 (1977); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967). None of the parties, nor my colleagues, has proffered any language from the legislative history of the Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.* (Communications Act), committing FCC decisions that affect attorneys entirely to the agency's discretion.

Another requisite to a judicial appeal is standing. Chase's standing under 5 U.S.C. § 702 as a person aggrieved by agency action seems quite clear. Moreover, the guidelines specified by the Supreme Court in *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), that the party meet the "case or controversy" test of Article III of the Constitution by demonstrating that the agency action caused the petitioner an "inquiry in fact," are satisfied. *See also Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (Article III standing requirement

an application. Neither case is analogous to the facts before us, where the disqualification order is undisputed FCC action, indeed the last agency decision on this matter, and where the aggrieved party has exhausted all possible agency relief.

5. Thus, I agree with Judge Williams that *Richardson–Merrell,* which was decided on finality doctrine, does not control this case. *See* Concurring Opinion at 522.

6. Judge Ginsburg's opinion cites this court's pre-*Richardson–Merrell* decision, *Community Broadcasting of Boston, Inc. v. FCC,* 546 F.2d 1022 (D.C.Cir.1976), as additional support for the nonreviewability of an agency disqualification order. But *Community Broadcasting* involved a denial, not a grant, of a disqualification motion, so that the express cause of action created by Rule 1.301 could not have been relevant.

incorporates three elements of (a) personal injury, (b) fairly traceable to defendant's allegedly unlawful conduct, and (c) likely to be redressed by requested relief). Also relevant to the standing inquiry is the fact that the interest Chase seeks to protect in this case is within the zone of interests that Congress intended to benefit or regulate through the legislation in question, namely, the Communications Act.

The likelihood of reputational and economic injury to Chase from the disqualification order settles the first concern. Chase has a "cognizable interest" in his professional reputation, *see Meese v. Keene,* —— U.S. ——, 107 S.Ct. 1862, 1867, 95 L.Ed.2d 415 (1987); *see also Southern Mutual Help Association, Inc. v. Califano,* 574 F.2d 518, 524 (D.C.Cir.1977), which has been marred by the FCC's multiple charges of misconduct.[7] Reversal of the disqualification order by this court not only would lift this stigma, *see id.,* but also would be likely to redress, at least in part, Chase's economic injury from the disqualification inasmuch as his future earnings, indeed all attorneys' fees, turn on professional reputation. *See* Model Rules of Professional Conduct Rule 1.5(a)(7), *cited and annotated* in G. Hazard, The Law of Lawyering (1987) (reputation is factor in determining fees to clients).[8]

With respect to the second aspect of standing, whether a particular plaintiff is "arguably within the zone of interests" Congress intended to benefit or regulate, the Supreme Court has recently reminded this court that this "zone of interests" test was "not meant to be especially demanding...." *Clarke v. Securities Industry Association,* 479 U.S. 388, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987). The Court wrote that "there need be no indication of congressional purpose to benefit the would-be plaintiff," but rather there must simply be a "plausible relationship" between the litigants' interests and the policies embodied in "the overall context" of the statute in question. *Id.* 107 S.Ct. at 758–59. The relevant statutory context in this case is the broad delegation by Congress to the FCC of adjudication of disputes in the broadcasting industry. Specifically, the promulgation of Rule 1.301, which establishes agency adjudicatory procedures, falls under Congress' charge in the Communications Act that "[t]he Commission may conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice." 47 U.S.C. § 154(j).[9] The plain language of the statute implies broad agency discretion; moreover, the Supreme Court has fully endorsed this wide authority. *See FCC v. Schreiber,* 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). In allowing the FCC wide latitude to organize its internal proceedings, Congress clearly intended that the FCC could regulate attorneys who would appear before the agency.[10] *Cf. United States v.*

---

**7.** The FCC Review Board, as well as the ALJ whose order the Board affirmed, relied on attorney disciplinary rules to disqualify Chase. *See In re Owens,* 104 F.C.C.2d 848, 851–52 n. 3, 856 (Rev.Bd.1986), Joint Appendix (J.A.) at 5–6, 10. Both also commented negatively about Chase's past professional behavior, *see id.* at 859 n. 8, J.A. at 13, and the Board expressly invited the Committee on Professional Responsibility of the Federal Communications Bar Association to examine the entire matter. *See id.* at 858 n. 7 (Rev.Bd.1986), J.A. at 12.

**8.** Case law emphasizes that certainty of redressing injury is unnecessary; "mere likelihood [of redress] will do." *National Wildlife Federation v. Hodel,* 839 F.2d 694, 705 (1988) (citing cases).

**9.** The effect of Rule 1.301(a)(5), of course, is to make the disqualified attorney not merely a "person aggrieved" by agency action, but a "partly" adversely affected, one who actually participates in the agency proceeding. *Cf. Water Transport Ass'n v. ICC,* 819 F.2d 1189, 1192 n. 27 (D.C.Cir.1987) (noting that "party aggrieved" appealability standard is more stringent than APA "person aggrieved" standard). Rules, like 1.301, which create a separate cause of action altogether, do not open a floodgate for litigants seeking court review, if only because agencies surely will be reluctant to proliferate opportunities for others to mount judicial challenges to their orders.

**10.** The asserted distinction between persons regulated and persons "affect[ed]" by legislation, *see* Concurring Opinion at 523, drawn from *Tax Analysts & Advocates v. Blumenthal,* 566 F.2d 130 (D.C.Cir.1977), through *Haitian Refugee Center v. Gracey,* 809 F.2d 794 (D.C.Cir.1987), is unpersuasive. Most important, these cases antedate the recent, deliberate Supreme Court relaxation of the zone of interest test. *See*

*Erika, Inc.,* 456 U.S. 201, 207 n. 7, 102 S.Ct. 1650, 1653 n. 7, 72 L.Ed.2d 12 (1981) (Secretary of Health and Human Services' regulations "extends" right of agency review to persons not expressly assured right in statute); *Ezell v. Bowen,* 669 F.Supp. 141, 143 (S.D.W.Va.1987) (court impliedly recognizes that agency regulation may give rise to legitimate judicial review, though statute does not extend right of review to nonattorney representative). The FCC has quite reasonably decided that the fairness and efficiency of its proceedings are enhanced when the members of the specialized bar who appear before the agency have the opportunity to challenge disqualification orders. *See Removal of Counsel From Hearing Proceeding,* 59 F.C.C.2d 1384 (1976). The disqualified attorneys therefore fall within the zone of interests of the Communications Act.

In sum, I fear that Judge Ginsburg overlooks the difference between the FCC administrative proceedings involved in this case and Article III district court proceedings when she expands the *Richardson–Merrell* reviewability bar to a disqualification decision that is a final agency order, which arose from an underlying dispute that has been settled, yet was properly pursued as a separate cause of action under an agency rule that allows disqualified attorneys an independent route to vindication. I would apply traditional rules of reviewability of agency action and reach the merits of the attorney's appeal.

It strains credulity that a lawyer appearing before an agency may be disqualified in a case on the basis of alleged unethical practices, even misconduct, and, because the client settles the case or refuses to appeal the order, the lawyer forfeits recourse in the courts for the palpable injury to her reputation and future livelihood. Along with both parties to this appeal, I simply do not think that *Richardson–Merrell* meant to take us so far from notions of fundamental fairness.

I respectfully dissent.

---

*Clarke v. Securities Industry Association,* 107 S.Ct. 750 (1987); *see also National Cottonseed Products Ass'n v. Brock,* 825 F.2d 482, 490–91 (D.C.Cir.1987) (noting *Clarke* liberalization; criticizing *Haitian Refugee Center;* and reasserting this court's position that "vendors" meet prudential standing requirement even if they are outside the "zone" as long as their customers would pass zone test); *Investment Co. Instit. v. FDIC,* 815 F.2d 1540, 1544 (D.C.Cir.1987) (noting *Clarke* liberalization that absent congressional intent to preclude review, mere " 'plausible relationship' " to protected interests satisfies zone test). The Court in *Clarke,* we have noted, not only minimized the rigor of the test, but also enlarged it to extend to persons whose interests are within "the overall [policy] context" of the legislation. This context is especially broad with the Communications Act, and clearly encompasses attorneys practicing before the FCC. Indeed, the Court has assumed so in *FCC v. Schreiber,* 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed. 2d 383 (1965), and its progeny. Additionally, both *Tax Analysts* and *Haitian Refugee Center,* indeed most prudential standing case law, concerned courts' efforts to narrow third parties' ability to assert the rights of others. This concern about dilution of immediate effect is certainly not involved in the present case. We emphasize again that attorney Chase seeks review of an agency action against himself; he seeks to vindicate *his* legal rights, and to do so pursuant to an express agency process created for just that purpose.