Decided October 22, 1998

STATE OF CONNECTICUT *v.* RONALD VUMBACK

The defendant's petition for certification for appeal from the Appellate Court (18228) is denied.

BERDON, J., dissenting. By denying certification in this case, the majority of this court summarily strips the defendant of his choice of counsel without affording him an opportunity to be heard before the court on the merits of the disqualification.

The defendant, Ronald Vumback, was charged with several counts of sexual assault and risk of injury to a child. On February 27, 1998, the state moved to disqualify his attorney, Norman A. Pattis, citing a purported

conflict of interest.[1] The trial court, *Fracasse, J.*, granted the motion on March 2, 1998, and the defendant filed a timely appeal. The state filed a motion to dismiss the appeal, which the Appellate Court granted on June 17, 1998, without the benefit of a written opinion, concluding that it lacked jurisdiction because the dismissal did not constitute a final judgment.

In *State* v. *Rapuano*, 192 Conn. 228, 229 n.1, 471 A.2d 240 (1984), overruled in part, *Burger & Burger, Inc.* v. *Murren*, 202 Conn. 660, 552 A.2d 812 (1987), we explained that "[t]he granting of a motion to disqualify an attorney is . . . an appealable final judgment." An en banc panel of the Second Circuit Court of Appeals has provided a compelling discussion of the grave policy considerations underlying this conclusion. "[T]he losing party is immediately separated from counsel of his choice. If the order is erroneous, correcting it by an appeal at the end of the case might well require a party to show that he lost the case *because* he was improperly forced to change counsel. This would appear to be an almost insurmountable burden. In addition, permitting an immediate appeal from the grant of a disqualification motion does not disrupt the litigation, since the trial must be stayed in any case while new counsel is obtained. . . . [Moreover, it is very unlikely] that appeals from orders granting disqualification motions will be taken purely for tactical reasons." (Emphasis added.) *Armstrong* v. *McAlpin*, 625 F.2d 433, 440–41 (2d Cir. 1980), vacated on other grounds, 449 U.S. 1106, 101 S. Ct. 911, 66 L. Ed. 2d 835 (1981). Although *Armstrong* has since been overruled by *Flanagan* v. *United States*, 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984), I find the reasoning of *Armstrong* overwhelming. Accordingly, under state law, I would hold that

---

[1] The state claimed that Pattis' law firm, Williams, Polan and Pattis, LLC, represented a police officer who was expected to testify for the state in this case.

disqualification of defense counsel in a criminal trial is appealable—either as a final judgment or under the second exception to the final judgment rule articulated in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983) ("where the order or action so concludes the rights of the parties that further proceedings cannot affect them").

*Rapuano* was a criminal case, but we did not limit our explanation to the criminal context. Instead, our general language encompassed both civil and criminal cases. Three years after *Rapuano*, in *Burger & Burger, Inc.* v. *Murren*, supra, 202 Conn. 669, the court parted company with the Second Circuit by determining that the disqualification of an attorney *in a civil case* does not constitute a final judgment. Accordingly, the court held that, "*[t]o the extent that State* v. *Rapuano . . . [is] inconsistent with this conclusion*, [it is] overruled." (Citation omitted; emphasis added.) Id., 670. The court in *Burger & Burger, Inc.*, however, carefully limited its language to the civil context.[2] Significantly,

---

[2] In the first line of *Burger & Burger, Inc.*, the court stated that "[t]he dispositive issue on this appeal is whether the granting of a motion to disqualify counsel *in a civil case* is an appealable final judgment." (Emphasis added.) *Burger & Burger, Inc.* v. *Murren*, supra, 202 Conn. 661. Later in the opinion, the court observed that federal decisions rendered subsequent to *Rapuano* "conclud[ed] that disqualification orders *in civil cases* are not appealable final judgments." (Emphasis added.) Id., 663. Furthermore, the court expressly recognized the "myriad variables present in *civil* litigation [that] concededly would impose a difficult burden on a losing litigant" seeking to demonstrate that he had been aggrieved by the disqualification of counsel. (Emphasis added; internal quotation marks omitted.) Id., 668. Finally, in the course of one short paragraph concluding that an order disqualifying counsel is an interlocutory order, as opposed to a final judgment, the court twice took pains to emphasize that its discussion was limited to the civil context. Id., 664.

It is, of course, of no moment that the United States Supreme Court determined in *Flanagan* v. *United States*, supra, 465 U.S. 259, that, under federal law, disqualification orders in criminal cases are not appealable final orders. As I have indicated, I find the reasoning of *Armstrong* overwhelming, particularly in the criminal context. I believe that we should adopt it as a matter of state law. The fleeting reference to *Flanagan* in *Burger & Burger*,

the court did *not* address the criminal aspect of *Rapuano*. The court thus tacitly retained that portion of *Rapuano* that addresses disqualification of attorneys representing criminal defendants. The present petition for certification asks us to expressly rule upon the significance of the careful limitations employed throughout *Burger & Burger, Inc.* By declining to do so, the majority implicitly explodes the scope of that case without the benefit of a reasoned discussion. In my view, this stratagem threatens the fundamental right of an accused to counsel of his choice.

In *Burger & Burger, Inc.* v. *Murren*, supra, 202 Conn. 663, the court justified the rule announced to govern civil litigation by invoking the policy goal of efficiency.[3] It is apparent to me that the preeminence of this policy dissolves in the criminal context. The court acknowledged in *Burger & Burger, Inc.*, "the fact that the right to counsel of one's choice, although not absolute, is a fundamental premise of our adversary system." Id., 668. Today's majority flagrantly disregards the significance of this fact for a criminal defendant. The right to counsel in a criminal prosecution is not only embodied in our state constitution; Conn. Const., art. I, § 8; it has also

*Inc.*, is not even dicta on this question of state law, let alone an authoritative pronouncement of this court. See *Burger & Burger, Inc.* v. *Murren*, supra, 202 Conn. 663. ("[A] recent decision of the United States Supreme court in *Richardson-Merrell, Inc.* v. *Koller*, 472 U.S. 424, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985), has, however, resolved this question on the *federal* level by concluding that disqualification orders in *civil* cases are not appealable final judgments. Cf. *Flanagan* v. *United States*, [supra, 259] (disqualification orders in criminal cases are not appealable final judgments)." (Emphasis added.) Id. Just as the *Burger & Burger, Inc.*, court conducted a thorough analysis of appealability in the civil context, notwithstanding the unambiguous holding of *Richardson-Merrell, Inc.*, it is equally important to conduct a thorough analysis of appealability in the criminal context, notwithstanding *Flanagan*.

[3] "The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level." *Burger & Burger, Inc.* v. *Murren*, supra, 202 Conn. 663; see id., 668.

been richly embellished in the history of this state. "Not only was Connecticut 'the first state to adopt the public defender system'; *State* v. *Hudson*, 154 Conn. 631, 635, 228 A.2d 132 (1967); but the right to counsel 'was secured to criminal defendants in this state long before the mandate of *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 [(1962) (holding that the fourteenth amendment incorporated the sixth amendment right to counsel)]. . . .' *Spring* v. *Constantino*, 168 Conn. 563, 566–67 n.2, 362 A.2d 871 (1975). The United States Supreme Court has turned to the historical experience of Connecticut in expanding the right to counsel under the federal constitution. *Faretta* v. *California*, 422 U.S. 806, 827, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *Powell* v. *Alabama*, [287 U.S. 45, 62–63, 53 S. Ct. 55, 77 L. Ed. 158 (1932)]." *State* v. *Stoddard*, 206 Conn. 157, 165, 537 A.2d 446 (1988).

It is imperative that a criminal defendant should have his or her choice of counsel unless there are compelling reasons to thwart this choice. In a criminal trial, the enormous coercive power of the state and the outrage of the community are both pitted against a lone individual. Defense counsel is often the only person who stands on the side of the accused. An almost sacred relationship exists between a criminal defendant and his lawyer, and it is for this reason that the state should not lightly wrench the two apart.

As the court recognized in *Burger & Burger, Inc.*, "[a] court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." (Internal quotation marks omitted.) *Burger & Burger, Inc.* v. *Murren*, supra, 202 Conn. 662. By denying the present petition for certification, the majority implicitly overrules the criminal aspect of *Rapuano*, yet it has advanced neither reason nor logic for its decision to do so.

Accordingly, I dissent.

MCDONALD, J., dissenting. I would grant the petition to review directly the issue of whether the disqualification of defense counsel in a criminal case is appealable before the trial; see *State* v. *Rapuano*, 192 Conn. 228, 229 n.1, 471 A.2d 240 (1984); as I view the question unanswered by *Burger & Burger, Inc.* v. *Murren*, 202 Conn. 660, 522 A.2d 812 (1987).

*Norman A. Pattis*, in support of petition.

*Toni Smith-Rosario*, deputy assistant state's attorney, in opposition.

Decided October 22, 1998