### LEONARD M. CRONE ET AL. v.
### CHARLES GILL ET AL.
### (SC 16007)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued April 27—officially released August 24, 1999

---

*Leonard M. Crone*, the named plaintiff in error.

*Carolyn K. Querijero*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the named defendant in error.

*Eileen M. Geel*, assistant state's attorney, with whom, on the brief, was *John A. Connelly*, state's attorney, for the defendant in error Eve Lenczewski.

*Opinion*

PALMER, J. This case is before us on a writ of error brought by the named plaintiff in error, Leonard M. Crone (plaintiff), an attorney, who seeks reversal of an order of the trial court disqualifying him from any further representation of his client, the plaintiff in error, Alvin Lopes, in Lopes' pending criminal case. We conclude that the plaintiff lacks standing to challenge the disqualification order and, accordingly, we dismiss the writ of error.[1]

The relevant facts and procedural history are undisputed. In 1993, the plaintiff instituted a civil action on behalf of Dana Crim in Superior Court in the judicial district of Waterbury (Waterbury Superior Court). The

---

[1] Because we conclude that the plaintiff does not have standing to challenge the trial court's order, we lack subject matter jurisdiction over his claim. Consequently, we do not reach the merits of the plaintiff's contention that the trial court improperly disqualified him from his continued representation of Lopes.

plaintiff represented Crim through the completion of the trial of that matter in November, 1995.

Subsequently, in an unrelated criminal case, Lopes was charged with the May 11, 1997 assault and stabbing of Crim. The plaintiff thereafter filed an appearance on behalf of Lopes in that criminal case, which was pending in Waterbury Superior Court.

On June 12, 1998, assistant state's attorney Eva Lenczewski moved to disqualify the plaintiff from representing Lopes in light of the plaintiff's prior representation of Crim. The named defendant in error, Judge Charles Gill (trial court), held a hearing at which he canvassed both Crim and Lopes. Lopes expressed his desire to have the plaintiff continue as his attorney despite the plaintiff's prior representation of Crim. Crim, however, expressed discomfort at having his former attorney represent Lopes, and refused to waive the plaintiff's duty of confidentiality. In recognition of a serious potential for a conflict of interest, the trial court, on June 16, 1998, issued an order disqualifying the plaintiff from representing Lopes in the pending criminal matter.

Seeking a reversal of the trial court's order, the plaintiff brought this writ of error,[2] naming both Judge Gill and Lenczewski as defendants in error.[3] Both defendants filed motions to dismiss[4] the writ of error for lack of subject matter jurisdiction. The dispositive question, as formulated by this court and briefed by the parties, is: "Does [the plaintiff] lack standing to contest the order disqualifying him, or does an attorney have a right to represent a particular client that gives him standing

---

[2] Lopes joined the plaintiff's writ of error.

[3] Hereinafter, we refer to both defendants in error collectively as the defendants.

[4] On November 3, 1998, this court granted the defendants' motions to dismiss the writ of error as to Lopes.

to file a writ of error seeking review of an order disqualifying him from such representation?"[5] We conclude that the plaintiff lacks standing to contest the disqualification order.

The plaintiff contends that he has standing to challenge the trial court's disqualification order because he has suffered both a loss of income and harm to his reputation. The plaintiff contends that, because the trial court's disqualification order impaired his protected right to engage in the practice of law, he is entitled to appellate review of that order. The defendants concede that an attorney has a generalized "interest" in practicing law, and that such an interest vests an attorney with certain due process protections. The defendants contend, however, that an attorney's interest in practicing law does not include the right to represent a particular client or to hold a particular position. The defendants caution that, in order to ensure that an attorney's personal interest in challenging a disqualification order does not trump the client's best interests, the right to appeal from a disqualification order must vest in the client alone. We agree with the defendants that an attorney has no cognizable right to represent a particular client and, therefore, lacks standing to challenge a disqualification order.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action  . . . ." (Internal quotation marks omitted.) *Stamford Hospital* v. *Vega*, 236 Conn. 646, 657, 674 A.2d 821 (1996). "Standing is established by showing that

[5] We also ordered the parties to brief a second issue, namely: "When an attorney seeks review of an order disqualifying him from representing a particular client, is the order a final judgment?" Because we conclude that the plaintiff lacks standing to challenge the trial court's disqualification order, we need not address the final judgment issue.

the party claiming it is authorized by statute to bring suit or is classically aggrieved." *Steeneck* v. *University of Bridgeport*, 235 Conn. 572, 579, 668 A.2d 688 (1995). The fundamental test for establishing classical aggrievement is well settled: "[F]irst, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision . . . ." (Internal quotation marks omitted.) *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 158–59, 699 A.2d 142 (1997); accord *Connecticut State Medical Society* v. *Board of Examiners in Podiatry*, 203 Conn. 295, 299–300, 524 A.2d 636 (1987). Second, the "party claiming aggrievement also must demonstrate that its asserted interest has been specially and injuriously affected in a way that is cognizable by law." *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, 235 Conn. 334, 343, 663 A.2d 1011 (1995).

The plaintiff maintains that he has satisfied the first prong of the aggrievement test because he has a specific personal and legal interest in his continued representation of Lopes. Specifically, the plaintiff contends that he has a financial interest in lost fee income and an interest in his reputation that allegedly has been damaged by the trial court's disqualification order. The plaintiff has offered no specific proof, however, as to how, or to what extent, his reputational or pecuniary interests have been affected by the disqualification order. "Allegations and proof of mere generalizations and fears are not enough to establish aggrievement." (Internal quotation marks omitted.) *Water Pollution Control Authority* v. *Keeney*, 234 Conn. 488, 496, 662 A.2d 124 (1995). Moreover, even if the plaintiff's allegations of harm had been more specific, we have doubts about whether the injury that he allegedly has suffered as a result of his disqualification would be sufficient to

satisfy the first prong of the aggrievement test.[6] We need not decide whether these alleged injuries satisfy the first prong of the aggrievement test, however, because we conclude that they do not meet the second prong.

The plaintiff asserts that he has satisfied the second prong of the aggrievement test because his alleged reputational and financial interests are protected under his general right to engage in the practice of law. We disagree. The plaintiff cites no authority, and we have found none, for extending the general right to practice law to include the right to represent a particular client in a particular case or to hold a particular job. In fact, the relevant precedent is to the contrary. See, e.g., *Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO* v. *McElroy*, 367 U.S. 886, 895–96, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961) (denial of opportunity to work at one place "most assuredly" does not implicate "right to follow a chosen trade or profession"); *Edelstein* v. *Wilentz*, 812 F.2d 128, 131–32 (7th Cir. 1987) (statute precluding attorneys from participating in one aspect of practice of law does not limit any right attorneys may have to earn livelihood and practice their profession); cf. *Johnson* v. *Statewide Grievance Committee*, 248 Conn. 87, 106–107, 726 A.2d 1154 (1999) (suggesting that investigation and administrative review of attorney's alleged professional misconduct, although potentially harmful, did not constitute denial of attorney's

---

[6] The plaintiff claims that his reputation has been injured because his disqualification by the trial court was tantamount to a finding of professional misconduct. The trial court, however, cast no aspersions on the plaintiff's conduct or on his professional integrity. Rather, the trial court explained that, in its view, the plaintiff's disqualification was necessary to *avoid* any future problems stemming from his cross-examination of his former client, Crim. In such circumstances, it is difficult to see how the plaintiff's reputational interest has been harmed. Furthermore, although the plaintiff claims a general pecuniary interest in his continuing representation of Lopes, he has not specified how that interest has been impaired as a result of this case.

right to practice law); *Pet* v. *Dept. of Health Services,* 207 Conn. 346, 372–73, 542 A.2d 672 (1988) (same for investigation and review of alleged professional misconduct by physician).

The defendants argue that we should follow the reasoning of the United States Supreme Court in *Richardson-Merrell Inc.* v. *Koller,* 472 U.S. 424, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985), in which that court concluded that the right to contest a disqualification order should rest solely with the client, and not with the disqualified attorney. See id., 435. In *Richardson-Merrell Inc.,* the plaintiff challenged an order of the United States District Court for the District of Columbia disqualifying her attorneys for misconduct. The Circuit Court of Appeals for the District of Columbia reversed the District Court's disqualification order; *Koller ex rel. Koller* v. *Richardson-Merrell Inc.,* 737 F.2d 1038, 1064 (D.C. Cir. 1984); relying in part on the attorneys' "interest . . . in correcting what they [claimed was] an erroneous finding of misconduct." Id., 1053. In thereafter reversing the Court of Appeals, the United States Supreme Court concluded that an order disqualifying an attorney is not subject to immediate appeal under the "collateral order" exception to the federal final judgment rule.[7] *Richardson-Merrell Inc.* v. *Koller,* supra, 472 U.S. 440. In reaching its conclusion, the United States Supreme Court specifically rejected the Court of Appeals' emphasis on the disqualified attorneys' "personal desire for vindication as an independent ground for interlocutory appeal." Id., 434–35. The court then

---

[7] The federal final judgment rule is codified at 28 U.S.C. § 1291. For an order to come within the purview of the "collateral order" exception to the final judgment rule, it must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." (Internal quotation marks omitted.) *Richardson-Merrell Inc.* v. *Koller,* supra, 472 U.S. 431. See generally *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949).

went on to say that: "An attorney who is disqualified for misconduct may well have a personal interest in pursuing an immediate appeal, an interest which need not coincide with the interests of the client. As a matter of professional ethics, however, *the decision to appeal should turn entirely on the client's interest.*" (Emphasis added.) Id., 435.

The Circuit Court of Appeals for the District of Columbia has since expounded on the reasoning of *Richardson-Merrell Inc.* in another appeal that, like this one, was brought directly by a disqualified attorney. See generally *Law Offices of Seymour M. Chase, P.C. v. Federal Communications Commission*, 843 F.2d 517 (D.C. Cir. 1988) (*Chase*).[8] In *Chase*, an attorney petitioned for review of the Federal Communication Commission's order disqualifying him from appearing as counsel in a broadcast licensing proceeding. Id., 518. The Court of Appeals dismissed his petition, concluding that an attorney has no independent right to appeal a disqualification order. Id., 522. In so concluding, the court stated that "the question of the appealability of the disqualification order by the attorney himself does not turn on the timing of the appeal. No judicial remedy is available . . . whether the attorney seeks immediate (interlocutory) appeal or awaits the conclusion, by final judgment, of the underlying proceeding from which the attorney was disqualified." Id., 521.[9]

---

[8] *Chase* was decided by a divided three judge panel. In addition to the opinion announcing the judgment, which was authored by then Circuit Judge, now United States Supreme Court Justice, Ruth Bader Ginsburg, there also was one concurring opinion and one dissenting opinion.

[9] The plaintiff cites the concurring opinion in *Chase* to support his claim of standing to bring the writ of error. *Law Offices of Seymour M. Chase, P.C. v. Federal Communications Commission*, supra, 843 F.2d 522 (Williams, J., concurring). Our review of the concurring opinion, however, reveals no support for the plaintiff's claim. Although Judge Williams wrote that "counsel's reputational interest surely satisfies the constitutional minimum"; id., 523 (Williams, J., concurring); he went on to conclude that counsel's interest did not fall within the zone of interests protected by the statute in question and, therefore, that the plaintiff lacked standing to appeal the commission's order. Id., 523–24 (Williams, J., concurring).

We find this reasoning to be persuasive. As we previously have noted, the competing interests at stake in a determination regarding the disqualification of an attorney are: "(1) the [former client's] interest in protecting confidential information; (2) the [current client's] interest in freely selecting counsel of [his or her] choice; and (3) the public's interest in the scrupulous administration of justice." *Bergeron* v. *Mackler*, 225 Conn. 391, 398, 623 A.2d 489 (1993). These interests do not embrace any purported right of an attorney to represent the current client.

To conclude otherwise would permit an attorney to obtain interlocutory judicial review of a disqualification order even in circumstances in which the delay caused by the appeal would be inimical to the interests of the client, the opposing party and the public. Generally, piecemeal review of trial court decisions that do not terminate the litigation should be avoided in the interests of the efficient operation of our judicial system;[10] see *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 47, 730 A.2d 51 (1999); and the policy against such review "is at its strongest in the field of criminal law . . . ." *United States* v. *Hollywood Motor Car Co.*, 458 U.S. 263, 265, 102 S. Ct. 3081, 73 L. Ed. 2d 754 (1982). "Promptness in bringing a criminal case to trial has become increasingly important as crime has increased, court dockets have swelled, and detention facilities have become overcrowded.

"[Furthermore,] [a]s the Sixth Amendment's guarantee of a speedy trial indicates, the accused may have a strong interest in speedy resolution of the charges against him.[11] In addition, there is a societal interest in

---

[10] This policy restricting interlocutory appeals is embodied in this state's final judgment rule. See General Statutes § 52-263.

[11] Lopes' criminal trial currently awaits our resolution of this appeal. Presumably, Lopes has consented to the delay, but that does not mean that the delay necessarily is in his best interests. Indeed, as we have indicated, it is of questionable propriety for a client to be placed in the position of

providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. . . . As time passes, the prosecution's ability to meet its burden of proof may greatly diminish: evidence and witnesses may disappear, and testimony becomes more easily impeachable as the events recounted become more remote. Delay increases the cost of pretrial detention and extends the period during which defendants released on bail may commit other crimes. . . . Delay between arrest and punishment prolongs public anxiety over community safety if a person accused of a serious crime is free on bail. It may also adversely affect the prospects for rehabilitation. . . . Finally, when a crime is committed against a community, the community has a strong collective psychological and moral interest in swiftly bringing the person responsible to justice. Prompt acquittal of a person wrongly accused, which forces prosecutorial investigation to continue, is as important as prompt conviction and sentence of a person rightly accused. Crime inflicts a wound on the community, and that wound may not begin to heal until criminal proceedings have come to an end." (Citations omitted; internal quotation marks omitted.) *Flanagan* v. *United States*, 465 U.S. 259, 264–65, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984). Moreover, allowing an attorney to bring an interlocutory appeal from a disqualification order could open the appellate door to others who, like the plaintiff, have a personal stake in remaining in a case, such as a purported expert witness who is deemed unqualified by the trial court.

We acknowledge that our decision today effectively eliminates the plaintiff's opportunity to obtain judicial review of the trial court's disqualification order. Although Lopes retains the right to challenge the disqualification order upon appeal from an adverse final

---

having to weigh his interest in a speedy trial against his attorney's desire to vindicate, on appeal, his purported reputational or pecuniary interests.

judgment, the plaintiff himself has no direct, personal remedy. In view of the nature of the interest asserted by the plaintiff, however, and in light of the countervailing practical and jurisprudential considerations, we conclude that the plaintiff has failed to demonstrate that his "asserted interest has been specially and injuriously affected in a way that is cognizable by law." *United Cable Television Services Corp.* v. *Dept. of Public Utility Control,* supra, 235 Conn. 343. Accordingly, the plaintiff lacks standing to challenge the trial court's disqualification order.

The writ of error is dismissed.

In this opinion CALLAHAN, C. J., and BORDEN, NORCOTT, KATZ and MCDONALD, Js., concurred.

BERDON, J., concurring. A substantial quantum of stigma is often associated with a trial court's decision that it will not permit a particular attorney to represent a particular client. I am troubled by the thought of counsel suffering this stigma without any recourse to judicial review. Nevertheless, I agree with my colleagues in the majority that—absent extraordinary circumstances—an attorney does not possess a right to assert an immediate appeal from his or her own disqualification in order to vindicate his or her pecuniary and reputational interests. I write separately for two interrelated reasons.

First, the majority opinion contains dicta that is of concern to me. The majority emphasizes that a criminal defendant "retains the right to challenge the disqualification [of his counsel] upon appeal from an adverse final judgment"—that is, after the completion of trial. In my view, a criminal defendant will never have an incentive to exercise this right. If the defendant is acquitted, then of course he has no reason to assert an appeal. If he is convicted, he still has little reason to

assert an appeal *from the order disqualifying his attorney*, because he would have to demonstrate "that he lost the case because he was improperly forced to change counsel. This would appear to be an almost insurmountable burden." (Internal quotation marks omitted.) *State* v. *Vumback*, 247 Conn. 929, 930, 719 A.2d 1172 (1998) (*Berdon, J.*, dissenting).

Correlatively, I want to reiterate my belief that a criminal defendant may assert an immediate appeal from the disqualification of his attorney in order to vindicate his right to counsel of his choice. Earlier this term, I explained that "[t]he right to counsel in a criminal prosecution is not only embodied in our state constitution; Conn. Const., art. I, § 8; it has also been richly embellished in the history of this state. Not only was Connecticut the first state to adopt the public defender system; *State* v. *Hudson*, 154 Conn. 631, 635, 228 A.2d 132 (1967); but the right to counsel was secured to criminal defendants in this state long before the mandate of *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 [(1962) (holding that the fourteenth amendment incorporated the sixth amendment right to counsel)]. . . . *Spring* v. *Constantino*, 168 Conn. 563, 566–67 n.2, 362 A.2d 871 (1975). The United States Supreme Court has turned to the historical experience of Connecticut in expanding the right to counsel under the federal constitution. *Faretta* v. *California*, 422 U.S. 806, 827, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *Powell* v. *Alabama*, [287 U.S. 45, 62–63, 53 S. Ct. 55, 77 L. Ed. 158 (1932)]. *State* v. *Stoddard*, 206 Conn. 157, 165, 537 A.2d 446 (1988).

"It is imperative that a criminal defendant should have his or her choice of counsel unless there are compelling reasons to thwart this choice. In a criminal trial, the enormous coercive power of the state and the outrage of the community are both pitted against a lone individual. Defense counsel is often the only person

who stands on the side of the accused. An almost sacred relationship exists between a criminal defendant and his lawyer, and it is for this reason that the state should not lightly wrench the two apart." (Internal quotation marks omitted.) *State* v. *Vumback*, supra, 247 Conn. 932–33 (*Berdon, J.*, dissenting). I continue to adhere to these views.