NORMAN KING *v.* ROBERT SULTAR
(SC 16086)

Borden, Norcott, Palmer, Sullivan and Vertefeuille, Js.

---

Argued January 11—officially released June 6, 2000

*Michael J. McAuliffe*, with whom was *Seth Feigenbaum*, for the appellant (city of New Britain).

*Stephen F. McEleney*, with whom, on the brief, was *Albert J. McGrail*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. The appellant, the city of New Britain (city), appeals from the trial court's denial of the city's motion to intervene in this action between the plaintiff-appellee, Norman King, and the defendant, Robert Sultar. We must consider whether the trial court properly denied an employer, which has paid benefits to a claimant pursuant to General Statutes § 7-433c,[1] commonly referred to as the Heart and Hypertension Act, the right to intervene, pursuant to General Statutes § 31-293 (a),[2] the intervention provision of the Workers'

[1] General Statutes § 7-433c provides in relevant part: "(a) Notwithstanding any provision of [the Workers' Compensation Act] or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under [the Workers' Compensation Act] if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment . . . . The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of [the Workers' Compensation Act] or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. . . ."

The legislature made amendments to § 7-433c in 1996 that are not relevant to this appeal. See Public Acts 1996, Nos. 96-230 and 96-231. For convenience, we refer to the current revision of § 7-433c throughout this opinion.

[2] General Statutes § 31-293 (a) provides in relevant part: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of the injured employee against such person, but the injured

employee may proceed at law against such person to recover damages for the injury; and any employer or the custodian of the Second Injury Fund, having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. If the employee, the employer or the custodian of the Second Injury Fund brings an action against such person, he shall immediately notify the others, in writing, by personal presentation or by registered or certified mail, of the action and of the name of the court to which the writ is returnable, and the others may join as parties plaintiff in the action within thirty days after such notification, and, if the others fail to join as parties plaintiff, their right of action against such person shall abate. . . . If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery. . . . If the damages, after deducting the employee's expenses as provided in this subsection, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. . . . The word 'compensation', as used in this section, shall be construed to include incapacity payments to an injured employee, payments to the dependents of a deceased employee, sums paid out for surgical, medical and hospital services to an injured employee, the burial fee provided by subdivision (1) of subsection (a) of section 31-306, payments made under the provisions of sections 31-312 and 31-313, and payments made under the provisions of section 31-284b in the case of an action brought under this section by the employer or an action brought under this section by the employee in which the employee has alleged and been awarded such payments as damages. . . . Notwithstanding the provisions of this subsection, when any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury and the injured employee has received compensation for the injury from such employer, its workers' compensation insurance carrier or the Second Injury Fund pursuant to the provisions of this chapter, the employer, insurance carrier or Second Injury Fund shall have a lien upon any judgment received by the employee against the party or any settlement received by the employee from the party, provided the employer, insurance carrier or Second Injury Fund shall give written notice of the lien to the party prior to such judgment or settlement."

The legislature made technical amendments to § 31-293 (a) in 1996 that are not relevant to this appeal. Public Acts 1996, No. 96-65. For convenience, we refer to the current revision of § 31-293 (a) throughout this opinion.

Compensation Act, in a civil action brought by the claimant against a third party tortfeasor. We conclude that the city, as an employer that has paid § 7-433c benefits to the plaintiff, may intervene in this case pursuant to § 31-293 (a). Therefore, we must also consider whether the trial court's denial of the city's motion to intervene can be affirmed on the alternate ground that the city had failed to file a certificate of good faith, which the plaintiff argues is required by General Statutes § 52-190a.[3] We conclude that the city was not required to file such a certificate. Accordingly, we reverse the trial court's order denying the city's motion to intervene.

The record reveals the following relevant facts and procedural history. On January 4, 1996, the plaintiff, then a firefighter employed by the city, suffered an acute myocardial infarction. Subsequently, the plaintiff filed for benefits pursuant to § 7-433c. Based on the nature of his injury and his status as a firefighter, the workers' compensation commissioner awarded the plaintiff § 7-433c benefits. Subsequently, the plaintiff's attorney, pursuant to § 52-190a, filed a certificate of good faith stating that he had a good faith belief that grounds existed for an action against the defendant, his treating physician.

The plaintiff then filed a one count complaint against the defendant, alleging that the defendant's negligence

---

[3] General Statutes § 52-190a provides in relevant part: "(a) No civil action shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate, on a form prescribed by the rules of the superior court, of the attorney or party filing the action that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant. . . ."

caused the plaintiff to suffer the acute myocardial infarction. The city moved to intervene pursuant to § 31-293 (a) as a coplaintiff in the underlying action against the defendant, seeking to recover from the defendant sums of money that it had paid and had become obligated to pay to the plaintiff pursuant to § 7-433c. The trial court, *Leheny, J.*, denied the city's motion to intervene. The city appealed to the Appellate Court from the trial court's denial of the city's motion to intervene, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

## I

"A threshold inquiry of this court upon every appeal presented to it is the question of appellate jurisdiction." *Kulmacz* v. *Kulmacz*, 177 Conn. 410, 412, 418 A.2d 76 (1979). "It is well established that the subject matter jurisdiction of the Appellate Court and of this court is governed by [General Statutes] § 52-263,[4] which provides that an *aggrieved party* may appeal to the court having jurisdiction from the *final judgment* of the court." (Emphasis added; internal quotation marks omitted.) *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 45, 730 A.2d 51 (1999).

We consider the aggrievement prong first. "The fundamental test for establishing classical aggrievement is well settled: [F]irst, the party claiming aggrievement must successfully demonstrate a specific personal and

[4] General Statutes § 52-263 provides in relevant part: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict . . . ."

legal interest in the subject matter of the decision . . . . Second, the party claiming aggrievement also must demonstrate that its asserted interest has been specially and injuriously affected in a way that is cognizable by law." (Citations omitted; internal quotation marks omitted.) *Crone* v. *Gill*, 250 Conn. 476, 480, 736 A.2d 131 (1999). The city's interest in gaining reimbursement from any recovery by the plaintiff is a "specific personal and legal interest . . . [that was] specially and injuriously affected"; (internal quotation marks omitted) id.; by the trial court's denial of the city's motion to intervene. Therefore, we conclude that the city is aggrieved.

We next consider whether the trial court's denial of the city's motion to intervene, although interlocutory, is a final judgment for purposes of this appeal. This issue is controlled by *Winslow* v. *Lewis-Shepard, Inc.*, 216 Conn. 533, 582 A.2d 1174 (1990), in which we stated: "The test for determining whether an order denying a motion to intervene constitutes a final judgment is whether the would-be intervenor can make a colorable claim to intervention as a matter of right. . . . In this case, [the would-be intervenor] has made a colorable claim to intervention as a matter of right because § 31-293 specifically grants an employer who has paid workers' compensation benefits to an employee the right to join as a party plaintiff in the employee's action against third party tortfeasors. . . . Accordingly, [the would-be intervenor] has appealed from a final judgment . . . ." (Citations omitted; internal quotation marks omitted.) Id., 536. Although, in this case, the city's liability to the plaintiff arose under § 7-433c rather than directly under the provisions of the Workers' Compensation Act, the city has made a colorable claim that § 7-433c incorporates the § 31-293 (a) right to intervention in the plaintiff's civil action against the defendant. Therefore, we conclude that the city is appealing from a final judgment for purposes of this appeal.

Finally, we consider whether a litigant that has moved to intervene as a party in an underlying action has the requisite party status to invoke our appellate jurisdiction. We begin by noting that this court frequently has considered the appeals of unsuccessful would-be intervenors. See, e.g., *Hennessey* v. *Bristol Hospital*, 225 Conn. 700, 704, 626 A.2d 702 (1993); *In re Baby Girl B.*, 224 Conn. 263, 274–78, 618 A.2d 1 (1992); *Winslow* v. *Lewis-Shepard, Inc.*, supra, 216 Conn. 536; *Ricard* v. *Stanadyne, Inc.*, 181 Conn. 321, 322–24, 435 A.2d 352 (1980).

Although, in *State* v. *Salmon*, 250 Conn. 147, 735 A.2d 333 (1999), we stated that "review by way of appeal pursuant to § 52-263 is available only to parties to an underlying action"; id., 152; we did not consider whether would-be intervenors, namely, litigants that are seeking to become parties, can have sufficient party status to bring an appeal. As "[i]t is the general rule that a case resolves only those issues explicitly decided in the case"; (internal quotation marks omitted) id., 161; we conclude that *Salmon* did not overrule our long line of earlier cases in which we considered the appeals of would-be intervenors. See, e.g., *Hennessey* v. *Bristol Hospital*, supra, 225 Conn. 704; *Winslow* v. *Lewis-Shepard, Inc.*, supra, 216 Conn. 536. Therefore, we conclude that if a would-be intervenor has a "colorable claim to intervention as a matter of right"; (internal quotation marks omitted) *Winslow* v. *Lewis-Shepard, Inc.*, supra, 536; both the final judgment and party status prongs of our test for appellate jurisdiction are satisfied. Accordingly, having concluded that we have appellate jurisdiction, we consider the city's appeal on the merits.

II

We first consider whether the city, which has paid benefits to the plaintiff pursuant to § 7-433c, has the right to intervene, pursuant to § 31-293 (a), in an action

brought by the plaintiff against the defendant. The plaintiff claims that the city has no right under § 31-293 (a) to recover benefits the city has paid to him under § 7-433c. Specifically, the plaintiff argues that the city's right to intervene under § 31-293 (a) is limited to third party tortfeasor actions involving injuries compensable under the Workers' Compensation Act. The plaintiff further argues that, because the benefits the city had paid to him did not constitute compensation paid under the Workers' Compensation Act, but, rather, compensation paid under the Heart and Hypertension Act, the city has no right to intervene under § 31-293 (a). Finally, the plaintiff claims that the prohibition against double recovery in workers' compensation cases is inapplicable in this case.

The city claims that the trial court improperly denied its motion to intervene. Specifically, the city argues that § 31-293 (a) is incorporated by reference into § 7-433c. The city argues that, because it paid benefits to the plaintiff pursuant to § 7-433c, it has a right to intervene, pursuant to § 31-293 (a), in a civil action brought by the plaintiff against the defendant. Finally, the city argues that the long-standing rule against double recovery in workers' compensation cases would be violated if the city were denied the right to intervene in the underlying case because the plaintiff would be allowed to recover twice for his disability. We agree with the city.

This issue requires us to construe § 7-433c and § 31-293 (a) and the relationship between the two provisions. "Statutory construction . . . presents a question of law over which our review is plenary. . . . According to our long-standing principles of statutory construction, our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circum-

stances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Coelho* v. *ITT Hartford*, 251 Conn. 106, 110, 752 A.2d 1063 (1999).

We begin our analysis with the text of § 7-433c. General Statutes § 7-433c (a) provides that compensation paid thereunder shall be paid in *"the same manner"*; (emphasis added); as that paid under the Workers' Compensation Act. In addition, General Statutes § 7-433c (a) provides that "[t]he benefits provided by this section shall be in lieu of any other benefits . . . [a] fireman . . . may be entitled to receive from his municipal employer *under the provisions of [the Workers' Compensation Act] . . . except as provided by this section,* as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability." (Emphasis added.) This text suggests that the legislature considered benefits conferred under § 7-433c to be benefits that are functionally provided "under the provisions of [the Workers' Compensation Act] . . . ." General Statutes § 7-433c (a).

Consistent with such language, we previously have concluded that an award pursuant to § 7-433c *"is* a work[ers'] compensation award in the sense that its benefits are payable and procedurally administered under the Work[ers'] Compensation Act . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Carriero* v. *Naugatuck*, 243 Conn. 747, 759, 707 A.2d 706 (1998), quoting *Middletown* v. *Local 1073*, 1 Conn. App. 58, 65–66, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984). We also have noted that the essential difference between § 7-433c benefits and Workers' Compensation Act benefits is that the receipt of § 7-433c benefits "requires

no proof of eligibility or liability under the Work[ers'] Compensation Act." (Internal quotation marks omitted.) *Carriero* v. *Naugatuck,* supra, 760, quoting *Middletown* v. *Local 1073,* supra, 65. Thus, a § 7-433c "award is *payable under the provisions of the Work-[ers'] Compensation Act,* although the liability for its payment is not." (Emphasis added.) *Middletown* v. *Local 1073,* supra, 65.

Next, we consider the text of General Statutes § 31-293 (a), which provides in relevant part: "When any injury for which compensation is *payable under the provisions of [the Workers' Compensation Act]* has been sustained under circumstances creating in a person other than an employer . . . a legal liability to pay damages for the injury, the injured employee . . . may proceed at law against such person to recover damages for the injury; and any employer . . . *having paid, or having become obligated to pay, compensation under the provisions of [the Workers' Compensation Act]* may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. If the employee . . . brings an action against such person . . . the [employer] may join as [a party] plaintiff in the action . . . ." (Emphasis added.)

Thus, from the plain language of § 31-293 (a), intervention is allowed when an employer has "paid . . . compensation under the provisions of [the Workers' Compensation Act] . . . ." General Statutes § 31-293 (a). We previously have concluded that benefits awarded to an employee pursuant to § 7-433c are *"payable . . . under the Work[ers'] Compensation Act . . . ."* (Citation omitted; emphasis added; internal quotation marks omitted.) *Carriero* v. *Naugatuck,* supra, 243 Conn. 759. Therefore, we conclude that an employer that has paid a claimant benefits pursuant to § 7-433c has paid such benefits under the Workers' Compensa-

tion Act for purposes of the right to intervene, pursuant to § 31-293 (a), in an action brought by the claimant against a third party tortfeasor.

Our conclusion is further strengthened by the legislative history and circumstances surrounding the enactment and amendment of § 7-433c.[5] The circumstances surrounding the enactment of § 7-433c were reviewed extensively in *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 425 A.2d 131 (1979), in which we stated: "Connecticut statutes concerning compensation for policemen and firemen who die or are disabled as a result of hypertension or heart disease have had a rather tumultuous history. In 1951, the General Assembly enacted a statute providing that any impairment of health caused by hypertension or heart disease resulting in the total or partial disability of a uniformed member of a paid municipal fire department who successfully passed a physical examination on entry into such service shall be presumed to have been suffered in the line of duty. [General Statutes (Sup. 1951) §] 175b. The rebuttable presumption afforded to firemen was, in 1953, made applicable to regular members of paid, municipal police departments; [General Statutes (Sup. 1953) §] 308c; and, in 1955, was applied to situations where death, as well as disability, results. [General Statutes (Sup. 1955) §] 407d.

"This provision, which was repealed and reenacted in 1961 . . . Public Acts 1961, No. 330, §§ 1, 2; was amended by the legislature in 1967 making it explicit that the statute applies whether the condition occurs

---

[5] We note that the original version of § 31-293 (a) was enacted long before 1971, when § 7-433c originally was enacted as Public Acts 1971, No. 524, § 1. See *Doucette* v. *Pomes*, 247 Conn. 442, 469, 724 A.2d 481 (1999) ("[t]he [relevant] language of the 1917 act is virtually identical to that of the current § 31-293 (a)" [internal quotation marks omitted]). Thus, the legislative history of § 31-293 (a) does not reveal the legislature's intent with regard to the issue presented in this appeal.

while the policeman or fireman is on duty or off duty at the time. Public Acts 1967, No. 770, § 1. Apparently still dissatisfied with the restrictive implementation of those provisions, the General Assembly, in 1969, again amended the statute by making the state retirement system applicable to this section and by substituting a conclusive presumption that the hypertension or heart disease arose out of and in the course of the employee's employment in lieu of the simple presumption. Public Acts 1969, No. 380, § 1.

"In *Ducharme* v. *Putnam*, 161 Conn. 135, 285 A.2d 318 [1971], however, this court held . . . that the conclusive presumption prescribed . . . in the adjudication of work[ers'] compensation cases was in contravention of the due process clauses of both the state and federal constitutions since it operated to completely bar an employer from attempting to prove the negative fact that in a contested case a heart ailment was not causally connected with the employment. [Id., 143]. *In obvious response to the suggestion in* Ducharme *that the objective of this legislation might be constitutionally attained by legislation requiring municipalities to provide special compensation or a bonus for policemen and firemen or supplemental or special risk insurance in the case of such occupations;* id., 144; the General Assembly thereafter enacted § 7-433c . . . . Upon a subsequent constitutional challenge, the validity of § 7-433c was sustained in 1975 in *Grover* v. *Manchester*, 168 Conn. 84, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 [1975]. In *Grover*, we concluded that this statute, which simply [provides] special compensation, or even an outright bonus, to qualifying policemen and firemen, serves a proper public purpose and does not create a class preference which contravenes § 1 of article first of the Connecticut constitution. Id., 88–89 . . . ." (Citation omitted; emphasis added; internal quotation marks

omitted.) *Plainville* v. *Travelers Indemnity Co.*, supra, 178 Conn. 667–69.

The legislative history of House Bill No. 9245, the bill eventually enacted as Public Acts 1971, No. 524, § 1, and codified at § 7-433c, clearly and unequivocally demonstrates that the legislature enacted § 7-433c in direct response to our decision in *Ducharme*. See 14 S. Proc., Pt. 6, 1971 Sess., pp. 2803–2804, remarks of Senator Wilbur Smith ("House Bill 9245, has been raised [in] response to the [Supreme Court's] decision and has been drafted with the court's suggestion. It provides a means of carrying out what has been the clear and consistent intent of this legislation since 1959.").

In 1977, the legislature amended § 7-433c to provide that benefits conferred under the Heart and Hypertension Act are in lieu of any benefits that a policeman or fireman might be entitled to receive under other sections of the Workers' Compensation Act. Public Acts 1977, No. 77-520, § 1 (P.A. 77-520). The legislative history of House Bill No. 8095, the bill eventually enacted as P.A. 77-520, § 1, which amended § 7-433c, "demonstrates that it was intended to place those policemen [or firemen] who die or are disabled as a result of heart disease or hypertension in the same position vis-a-vis compensation benefits as policemen [or firemen] who die or are disabled as a result of service related injuries." (Internal quotation marks omitted.) *Maciejewski* v. *West Hartford*, 194 Conn. 139, 146, 480 A.2d 519 (1984); see 20 H.R. Proc., Pt. 5, 1977 Sess., p. 1817, remarks of Representative Samuel Gejdenson ("[w]hat this bill does is sees that [a person collecting benefits pursuant to § 7-433c] gets no more than if he [or she] was collecting benefits under work[ers'] compensation").

Thus, from the legislative history and the circumstances surrounding the enactment of § 7-433c, the following can be concluded. First, prior to our decision

in *Ducharme,* the legislature had included heart and hypertension benefits for firefighters among the benefits provided under the Workers' Compensation Act. Thus, the legislature had evinced an unequivocal intent to have the intervention provision of § 31-293 (a) apply to heart and hypertension benefits, inasmuch as such benefits were paid pursuant to the Workers' Compensation Act itself. Second, the legislature, in response to *Ducharme,* adopted § 7-433c as a means of "carrying out what [had] been the clear and consistent intent of th[e] legislation since 1959." 14 S. Proc., supra, p. 2804, remarks of Senator Smith. As we previously stated, that intent included having § 31-293 (a) apply to employers that make heart or hypertension benefit payments to a claimant. In contrast, there is nothing in the legislative history to suggest that when the legislature adopted § 7-433c, it intended to strip employers of their right to intervene in third party tortfeasor cases when the employer has provided the claimant with heart or hypertension benefits. Third, the legislative history of the 1977 amendment to § 7-433c; Public Acts 1977, No. 77-520, § 1; provides further support for the conclusion that the legislature intended for claimants receiving § 7-433c benefits to receive "no more than if [they were] collecting benefits under work[ers'] compensation." 20 H.R. Proc., supra, p. 1817, remarks of Representative Gejdenson. Thus, the legislative history and the circumstances surrounding the enactment and amendment of § 7-433c bolster our conclusion that § 7-433c benefits are payable under the Workers' Compensation Act and, therefore, that § 31-293 (a) authorizes the city to intervene in this case.

Finally, were the plaintiff to prevail against the defendant in the underlying action, he would receive a double recovery under his construction of § 7-433c and § 31-

293 (a).[6] "If we were to accept the plaintiff's position and conclude that § 7-433c benefits are not to be considered work[ers'] compensation payments . . . the plaintiff would not be placed in the same position . . . as other . . . [firemen] who die or who are disabled as a direct result of service-related injuries; rather, he would be placed in a superior position . . . ." (Internal quotation marks omitted.) *Maciejewski* v. *West Hartford*, supra, 194 Conn. 151. Should the plaintiff recover damages in his action against the defendant, an unwarranted windfall would result, namely, he would recover the § 7-433c benefits paid by the city, as well as damages from the defendant, for the same disability, and he would not have to repay his § 7-433c benefits from the money received from the defendant.

The plaintiff claimed at oral argument that the public policy against this double recovery constitutes the "bonus" that the legislature intended by enacting § 7-433c. See, e.g., *Grover* v. *Manchester*, supra, 168 Conn. 88 (§ 7-433c benefits constitute "special compensation or even an outright *bonus*, to qualifying policemen and firemen" [emphasis added]). We have held, however, that "the 'bonus' aspect of § 7-433c benefits is that the claimant is not required to prove that his or her heart disease or hypertension is causally connected to his or her employment, proof that would be required for workers' compensation benefits. *Carriero* v. *Naugatuck*, supra, 243 Conn. 754–55." *Gauger* v. *Frankl*, 252 Conn. 708, 713, 752 A.2d 1077 (2000). There is no merit to the plaintiff's contention that the bonus referred to in *Grover* is the opportunity to receive a double recovery. Furthermore, we have held that § 7-433c should be con-

[6] At oral argument, the plaintiff argued for the first time that, if § 7-433c benefits are subject to the collateral source rule; see General Statutes § 52-225b; he would not receive a double recovery. "Because this [argument] was not briefed by either party, we decline to consider it." *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 166 n.20, 714 A.2d 664 (1998).

strued so as to *prevent* the double recovery of benefits. See *Maciejewski* v. *West Hartford,* supra, 194 Conn. 151; see also *Middletown* v. *Local 1073,* supra, 1 Conn. App. 63.

By contrast, our construction of § 7-433c, which allows the city to recover the benefits that it has paid to the plaintiff should the plaintiff prevail in his lawsuit against the defendant, furthers the statute's legislative purpose "to protect against a wage loss, not to give some firemen and policemen a double recovery for the same wage loss." *Middletown* v. *Local 1073,* supra, 1 Conn. App. 63. Likewise, our construction of § 31-293 (a) promotes one of that statute's primary purposes: preventing double recovery by an employee. See *Nichols* v. *Lighthouse Restaurant, Inc.,* 246 Conn. 156, 164, 716 A.2d 71 (1998) ("the employer's statutory right to subrogation of the proceeds of the employee's claim against the tortfeasor implements the public policy of preventing double recovery by an injured employee").[7] Thus, the "strong public policy against double recovery"; id., 168; embodied in the Workers' Compensation Act bolsters our conclusion that the city may intervene in this case.

In reaching our conclusion, we distinguish a number of cases upon which the plaintiff relies. First, the plaintiff relies upon our decision in *Plainville* v. *Travelers Indemnity Co.,* supra, 178 Conn. 673, for the proposition that § 7-433c benefits are not payable under any part of the Workers' Compensation Act. We have, however, previously distinguished *Plainville* as being inapplicable in a case, such as the present case, in which

---

[7] Our construction of § 31-293 (a) also promotes one of the statute's other purposes, which is to protect "an employer by allowing the employer to obtain reimbursement for workers' compensation benefits from a third party tortfeasor . . . by becoming an intervening plaintiff in the employee's cause of action . . . ." *Nichols* v. *Lighthouse Restaurant, Inc.,* supra, 246 Conn. 164.

a claimant would receive a double benefit based on a particular construction of § 7-433c. See *Maciejewski* v. *West Hartford*, supra, 194 Conn. 150–51. In *Maciejewski*, we relied upon the Appellate Court's "well reasoned decision"; id., 151; in *Middletown* v. *Local 1073*, supra, 1 Conn. App. 58, in which that court stated: "The court in *Plainville* . . . held that the defendant insurance company was not required to pay benefits arising under . . . § 7-433c because such benefits were not work[ers'] compensation benefits under an insurance policy providing coverage for work[ers'] compensation benefits. Underlying the court's decision was the fact that basic contractual principles require a determination of what the parties intended as the risk to be covered. . . . The court . . . makes it clear that its holding is limited to the facts and context of the particular case.

"The *Plainville* court overruled an earlier case, *Pyne* v. *New Haven*, 177 Conn. 456, 418 A.2d 899 (1979), to the extent that *Pyne* expressed a contrary view. That portion of *Pyne* which expresses the legislative purpose of . . . § 7-433c is not disturbed. The intent of the legislation is to place qualifying firemen and policemen who die or are disabled as the result of hypertension or heart disease in the same compensation position as those who die or are disabled as the result of on-duty, service-related injuries. Its purpose is not to exalt those firemen and policemen who die of heart disease not work-related over those who die of the same disease during the course of or as a result of their on-duty services. *Plainville* v. *Travelers Indemnity Co.*, supra, [178 Conn.] 670. . . .

"The holding of *Plainville* does not require a result in th[is] . . . case which would give the defendant a double, concurrent collection of benefits . . . ." (Internal quotation marks omitted.) *Middletown* v. *Local 1073*, supra, 1 Conn. App. 61–62.

Similarly, the plaintiff's reliance on *Bakelaar* v. *West Haven*, 193 Conn. 59, 475 A.2d 283 (1984), and *McNulty* v. *Stamford*, 37 Conn. App. 835, 657 A.2d 1126 (1995), also is misplaced. Both *Bakelaar* and *McNulty*, like *Plainville*, involved instances in which a party other than a municipality allegedly was liable for the payment of benefits under § 7-433c. See *Bakelaar* v. *West Haven*, supra, 69–70 (city carries insurance coverage for claims under Workers' Compensation Act but not for claims under § 7-433c); *McNulty* v. *Stamford*, supra, 845 (second injury fund not liable for payment of benefits under § 7-433c). By contrast, in *Maciejewski* v. *West Hartford*, supra, 194 Conn. 150–51, and *Middletown* v. *Local 1073*, supra, 1 Conn. App. 60–61, as in this case, the issue was whether § 7-433c should be construed so as to allow a claimant to receive § 7-433c benefits, in addition to benefits from a separate source, for the same disability. It is clear that the facts and legal issues raised in this case are similar to those in *Maciejewski* and *Local 1073*, but not to those in *Plainville*, *Bakelaar* and *McNulty*.

*Morgan* v. *East Haven*, 208 Conn. 576, 546 A.2d 243 (1988), upon which the plaintiff also relies, is similarly inapposite. In *Morgan*, the issue was "whether an award made pursuant to . . . § 7-433c for a permanent partial disability [was] an asset of a deceased recipient's estate." Id., 577–78. Although we stated in dicta that "the substantive law of § 7-433c governs claims under that section . . . [and that the Workers' Compensation Act] is used only for purposes of computation"; id., 585 n.12; it is clear that we merely were restating our earlier conclusion that the express language of § 7-433c, which limits benefits to the claimant "or his dependents, as the case may be"; (internal quotation marks omitted) id., 581; controlled the issue in *Morgan*. Furthermore, in *Morgan*, we also stated: "We previously have noted the sound reasoning of the Appellate Court in . . .

*Local 1073* . . . on other issues relating to § 7-433c; see *Maciejewski* v. *West Hartford,* [supra, 194 Conn. 151] (*hypertension and heart disease benefits can be deducted as workers' compensation benefits* for purposes of establishing municipal pension benefits)." (Emphasis added.) *Morgan* v. *East Haven,* supra, 586. Thus, it is clear that *Morgan* does not stand for the proposition that § 7-433c benefits are never to be considered workers' compensation benefits.

### III

We next consider whether the trial court's order denying intervention can be affirmed on the alternate ground that the city had failed to file a certificate of good faith pursuant to General Statutes § 52-190a. The plaintiff argues that each complaining party in a negligence action against a health care provider, including intervening parties, must file a certificate of good faith. The plaintiff claims that, because the city has failed to file such a certificate, it is barred from proceeding further.

The city argues that this claim is not ripe because the trial court did not decide this issue in its memorandum of decision addressing the propriety of the city's motion to intervene, and because the city has not filed an intervening complaint. On the merits, the city argues that the purpose of § 52-190a was fulfilled when the plaintiff filed its certificate of good faith in the underlying action. The city further argues that, because it was not the original party filing the underlying action against the defendant, makes no new claims against the defendant, and merely seeks apportionment of any damages that the plaintiff may recover, it has no duty to file a certificate of good faith. We agree with the city on the merits.

We first consider whether this issue is ripe. First, although the trial court did not consider this issue, the

plaintiff clearly raised it before the trial court and the record is adequate for our review. The city provides no authority for its claim that "[a]n issue not addressed by the trial court is not ripe for appeal." On the contrary, if the trial court fails to rule on an issue raised by an appellee in the trial court, the appellee's failure to raise the issue on appeal may constitute an abandonment thereof. See, e.g., *McHugh* v. *McHugh*, 181 Conn. 482, 490 & n.4, 436 A.2d 8 (1980). Thus, it was proper for the plaintiff to have filed a preliminary statement of issues containing this alternate ground for affirmance. See *Metropolitan District Commission* v. *AFSCME, Council 4, Local 3713*, 35 Conn. App. 804, 805 n.1, 647 A.2d 755 (1994) (when trial court does not rule on alternate ground, burden is on appellee to provide adequate record for review of alternate ground). Therefore, the trial court's failure to rule on this issue does not mean that it is not ripe for our review.[8]

Second, we reject the city's argument that, because the trial court denied the city's motion to intervene, this claim is not ripe inasmuch as the city argues that it has not filed an intervening *complaint*. General Statutes § 52-190a provides, for those litigants subject to its requirements, that a certificate of good faith must be filed with the "complaint or *initial pleading*." (Emphasis added.) The city has filed its initial pleading in this case, namely, a motion to intervene. Thus, the city's failure to file a good faith certificate presents a live controversy as to whether its motion to intervene was legally deficient.[9] Accordingly, the plaintiff's alternate

---

[8] To follow the produce analogy, the plaintiff's claim is ripe; it simply was not picked by the trial court.

[9] A motion to strike is the proper method of challenging a party's failure to include such a good faith certificate. See *LeConche* v. *Elligers*, 215 Conn. 701, 711, 579 A.2d 1 (1990). In this case, however, the plaintiff filed an objection in the trial court to the city's motion to intervene based on the city's failure to include such a certificate. "As with any pleading made by a party without prior court approval, the party subjected to the pleading can seek court intervention *by filing either an objection to the pleading*, or a motion to dismiss *or a motion to strike*." (Emphasis added.) *Hallenbeck*

ground for affirmance is ripe for our review and we consider the merits of his claim.

We begin our analysis with the text of General Statutes § 52-190a (a), which provides in relevant part: "No civil action shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate, on a form prescribed by the rules of the superior court, of the attorney or party filing the action that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant. . . ."

We note that the legislature used the terms "attorney," "party," "complaint," "pleading" and "certificate" in the singular, suggesting an intent to require the filing of one certificate. The text of the statute suggests that its purpose is to prevent frivolous lawsuits against health care providers. See *Bruttomesso* v. *Northeastern Connecticut Sexual Assault Crisis Services, Inc.*, 242 Conn. 1, 15, 698 A.2d 795 (1997) ("[t]he purpose of [§ 52-190a] is to inhibit a plaintiff from bringing an inadequately investigated cause of action, whether in tort or in contract, claiming negligence by a health care provider"); *LeConche* v. *Elligers*, 215 Conn. 701, 710, 579 A.2d 1 (1990) ("the general purpose of § 52-190a is to discourage the filing of baseless lawsuits against

v. *St. Mark the Evangelist Corp.*, 29 Conn. App. 618, 626, 616 A.2d 1170 (1992). Thus, we consider the plaintiff's objection to the city's motion to intervene as a motion to strike.

health care providers"). By contrast, there is nothing in either the text of the statute or its underlying purpose to suggest that the legislature intended to require a would-be intervenor, under the facts of this case, to file a good faith certificate.[10] In addition, the plaintiff conceded at oral argument that he had found no legislative history to support such a construction. We conclude that the purpose of § 52-190a has been fulfilled in this case because the plaintiff has filed a certificate of good faith, as required by § 52-190a, and the city asserts no new claims against the defendant, but merely seeks apportionment of the damages. Thus, we conclude that the city was not required to file a certificate of good faith pursuant to § 52-190a in order to intervene in this case.

The order denying the motion to intervene is reversed and the case is remanded with direction to grant the motion to intervene, and for further proceedings according to law.

In this opinion the other justices concurred.

---

[10] Although the plaintiff attaches great significance to the fact that the statute provides that, prior to the filing of a "complaint or *initial pleading*"; (emphasis added) General Statutes § 52-190a; a certificate must be filed, there is nothing in the text of the statute to suggest that the legislature intended that the term initial pleading refer to a would-be intervenor's motion to intervene. On the contrary, a more reasonable reading of the statute requires a plaintiff to file a good faith certificate with the initial pleading when, for example, the plaintiff files a complaint and then later seeks to amend the complaint to include a count of health care provider negligence. In such a situation, the amended complaint constitutes the initial pleading with respect to that portion of the plaintiff's action dealing with health care provider negligence.